## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BRYAN ANTHONY REO**<br>P.O. Box 5100<br>Mentor, OH 44061<br><br>   Plaintiff,<br><br> v.<br><br>**LUDIVINE JOAN CLAUDIA REYNAUD**<br>Rue Dodonee 3<br>1180, UCCLE, Belgium<br><br><br>**DOMINIQUE BILDE**<br>Parlement européen<br>Bât. ALTIERO SPINELLI<br>04F368<br>60, rue Wiertz / Wiertzstraat 60<br>B-1047 Brussels, Belgium<br><br> Defendants | Case No:<br><br>Hon. |

| | |
|---|---|
| **REO LAW, LLC**<br>Bryan Anthony Reo (#0097470)<br>P.O. Box 5100<br>Mentor, OH 44061<br>(T):  (216) 505-0811<br>(E):  reo@reolaw.org<br>*Pro se Plaintiff and Attorney* | **Ludivine Joan Claudia Reynaud**<br>Rue Dodonee 3<br>1180, Uccle<br>Belgium<br>(T) + 32 493 47 40 74<br>Ludivine.reynaud@europarl.europa.eu<br>*Defendant* |

## PLAINTIFF'S COMPLAINT
## (JURY DEMAND ENDORSED HEREON)

  BRYAN ANTHONY REO (Plaintiff), *pro se*, alleges the following against LUDIVINE JOAN CLAUDIA REYNAUD ("Reynaud") and Dominique Bilde ("Bilde") (Defendants):

## I.  INTRODUCTION

1.  Plaintiff sues Defendant Ludivine Joan Claudia Reynaud for Defamation, False Light, Abuse of Process; and Defendant Dominique Bilde for Negligent Hiring, Negligent Retention, and Negligent Supervision.

## II.  PARTIES

2.  Plaintiff is an adult natural person who resides in Mentor, Lake County, Ohio. For purposes of Plaintiff's causes of action against Defendant, Plaintiff is a non-public figure.

3.  Defendant Ludivine Joan Claudia Reynaud is an adult natural person who is a French national living in Belgium and working as a credentialed assistant in the European Parliament. Defendant Reynaud previously had a romantic relationship with Plaintiff. Reynaud is an assistant to Defendant Bilde. Defendant Reynaud is a member of the French based National Rally party of Marine Le Pen and the Belgian based Vlaams Belang, a successor to a previously proscribed/outlawed neo-fascist association in Belgium which the Belgian government legally dissolved for violations of Belgian law.

4.  Defendant Dominique Bilde is an adult natural person who is a French national living in Belgium and working as a Member of the European Parliament ("MEP") (supranational legislator). Defendant Bilde is a member of the far-right National Rally party of Marine Le Pen.

## III.  JURISDICTION AND VENUE

5.  This Court enjoys subject matter jurisdiction over the instant civil action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00 and the dispute is between a citizen of Ohio and subjects of a foreign state 28 U.S.C. § 1332(a)(2).

6.  This Court enjoys personal jurisdiction over Defendant Reynaud because Defendant Reynaud caused tortious injury to Plaintiff in the State of Ohio by an act outside of the State of

Ohio that was committed by Defendant Reynaud with the purpose of injuring Plaintiff when Defendant Reynaud might reasonably have expected that Plaintiff would be injured in the State of Ohio.  R.C. § 2307.382(A)(6); Civ.R. 4.3(A)(9); *Kauffman Racing Equip., L.L.C., v. Roberts,* 126 Ohio St.3d 81, (Ohio 2010) (holding that a non-commercial website intentionally used to defame an Ohio resident provides Ohio courts personal jurisdiction over foreign tortfeasor). Defendant Reynaud made false defamatory statements to authorities in Plaintiff's municipality with the purpose of causing Plaintiff to be charged with a crime that Plaintiff did not commit and that Defendant Reynaud knew Plaintiff did not commit. This Court enjoys personal jurisdiction over Defendant Bilde because Defendant Bilde failed to prevent Defendant Reynaud from utilizing European Parliamentary resources, work email accounts, work days, work hours, for the purpose of committing intentional torts against Plaintiff. Further, because Plaintiff previously threatened to sue Defendant Bilde due to Defendant Reynaud's conduct, Defendant Bilde had actual or constructive knowledge of the basics of the dispute over Defendant Reynaud's conduct and utilization of work resources.

7.  Venue is proper with this Court via 28 U.S.C. 1391(b)(2) because Plaintiff resides within the boundaries of the judicial district of the Northern District of Ohio, specifically in Lake County, State of Ohio, and the Court's personal jurisdiction over Defendants exists via Ohio Civ.R. 4.3. Civ.R. 3(B)(7).

## IV.  STATEMENT OF FACTS

8.  Defendant Reynaud corresponded with Plaintiff throughout 2019 in the aftermath of Plaintiff's separation from his wife Stefani Rossi Reo and her departure from the USA for Brazil. Defendant Reynaud expressed a general dissatisfaction with her job, an expectation that Marine Le Pen (the boss of her party) would never win an election and wouldn't know how to govern even

if she managed to win, and a concern that Defendant Bilde was a "jealous catty snide bitch" who was preparing to fire her in the autumn of 2019 because of what Defendant Reynaud confessed were some serious mistakes committed by Defendant Reynaud. Defendant Reynaud wanted to quit her job and initiate a romantic relationship with Plaintiff and come to Plaintiff's residence as a prelude to moving in with Plaintiff and becoming an American citizen. Defendant Reynaud stated she wanted 3-6 children with Plaintiff and would either work alongside him in a legal capacity or devote herself entirely to managing his household and raising his children, at his discretion.

9. Defendant Reynaud is an educated woman who holds a 5-year degree issued by Institut d'études politiques de Paris (commonly known as "Sciences Po"). Before realizing how unstable Defendant Reynaud was, Plaintiff offered to pay for Defendant Reynaud's tuition for her to earn an LLM or a JD and to prepare her to pass the Ohio bar exam (an exam wherein Plaintiff passed on the first attempt with a score in the top 5% in 2018) so that Defendant Reynaud could practice law alongside Plaintiff.

10. Plaintiff met Defendant Reynaud for the first time in person in February of 2020 when Defendant Reynaud came to the United States solely for the purpose of meeting Plaintiff and having a romantic relationship with Plaintiff. Defendant Reynaud insisted her job was just a job and that she was not ideologically in affinity with Marine Le Pen or Len Pen's party and that it was "toxic" to have "that party" (National Rally) on her CV/resume and that her job was "about to end anyway." Plaintiff advised that she should quit her job and move on to something that didn't involve politicians in general or Marine Le Pen in particular.

11. While together in Ohio in February 2020 Defendant Reynaud stayed at Plaintiff's house. Plaintiff and Defendant Reynaud engaged in multiple consensual sex acts at the request of Defendant Reynaud, acts in which Defendant Reynaud eagerly participated and repeatedly

4

requested. Plaintiff did not film, record, photograph, or in any way record or store depictions of said acts. This point is relevant because Defendant Reynaud would later claim to police that Plaintiff was posting pornographic content of her online and impersonating her on pornographic websites. Plaintiff has never been in possession of any pornographic material of Defendant Reynaud and has never posted any such content anywhere online.

12. In March 2022 Defendant Reynaud made an accusation to police (in Mentor, Ohio) regarding Plaintiff allegedly posting pornographic material involving her, and claimed that pornographic material existed. She tellingly never provided images or screen-shots, she did not provide links to the alleged material, and she never even so much as tried to describe the substance of the material that was allegedly posted, simply stating that Plaintiff was impersonating her on pornographic websites and posting pornographic content about her.

13. It is most likely that Defendant Reynaud outright lied to Ohio police about the pornographic content. Defendant Reynaud would also later claim, to police, that Plaintiff was impersonating Defendant Reynaud online on pornographic websites but she again offered no proof of this other than making a bare accusation void of substantiating or corroborating evidence. Indeed, Plaintiff has never impersonated Defendant Reynaud in any capacity, whether in person, on the phone, online, let alone online on pornographic websites. Defendant Reynaud uttered a calumny against Plaintiff and knowingly made a false accusation to police that Plaintiff had perpetrated the crime known as "revenge pornography," R.C. § 2917.211, which essentially entails the unauthorized and non-consensual release of pornographic material.

14. Even prior to the false accusations Plaintiff's relationship and interactions with Defendant Reynaud was tumultuous to say the least. Plaintiff tentatively ended his involvement with Reynaud several times throughout 2020, in April, July and August. There was a 5-week period from August

to September of 2020 wherein Plaintiff did not even speak to Defendant Reynaud. Defendant Reynaud tentatively broke up with Plaintiff on 15 May 2020 but begged him to take her back on 16 May 2020 and thanked him for "tolerating her insufferable mood swings." The relationship was an "on/off," "up/down," "hot/cold," "push/pull" rollercoaster that left Plaintiff confused and perplexed and wondering what was going on with Defendant Reynaud and what was going on with Plaintiff himself. Defendant Reynaud had a hair-trigger and would explode over the simplest joke, a mundane observation about a current event in France, or anything she might perceive as a slight or a criticism. Interacting with Defendant Reynaud was often the equivalent of trying to navigate a minefield. The slightest hint of criticism could set off Defendant Reynaud into an explosive rage, trigger an episode wherein she would insist things were over or she would push so much Plaintiff would call things off, only for Defendant Reynaud to become surprisingly affectionate within 48 hours, tell Plaintiff how lucky and fortunate she was to have a relationship with, and how she couldn't wait to see Plaintiff again. Plaintiff has never before experienced that sort of whirlwind or rollercoaster of drama in any intimate/romantic relationship.

15. On 7 January 2021 Plaintiff made an anti-Trump joke with a reference to Hitler, the hit movie Downfall, the Fuhrer Bunker, and Steiner's attack, stating, "Trump told Goebbels not to worry, Steiner is mobilizing to attack and the attack will turn the electoral college count around." Defendant Reynaud was livid, said, "this conversation is over" and hung up on Plaintiff. Upon information and belief Defendant Reynaud does not approve of jokes that ridicule Donald Trump, Adolf Hitler, or make light of the downfall and collapse of the Third Reich because in the past Defendant Reynaud has made remarks in support of Marshal Philippe Petain of the Vichy French government. Plaintiff and Defendant Reynaud would not speak again until 10 May 2021.

16. On 10 May 2021 Defendant Reynaud sent Plaintiff 119 emails throughout Defendant Reynaud's working day (adjusting for the 6-hour time difference from Cleveland to Brussels), which during her 12-hour work day amounts to 1 email every 6 minutes for 12 hours. The emails consisted of vulgarities, lewd remarks, references to genitals, and continued until Plaintiff invoked the Ohio telecommunications harassment statute and told Defendant Reynaud that Plaintiff would sue her in Ohio and sue her boss, Defendant Bilde, for allowing Defendant Reynaud to use the EU Parliamentary computer and internet in such a manner. Defendant Reynaud then stopped emailing Plaintiff vulgarities and lewd content and sent emails that still constituted a high volume but were inoffensive.

17. Throughout the early morning hours of 11 May 2021, Defendant Reynaud called Plaintiff by phone starting around 4:00 am Plaintiff's local time and continuing into 6:00 am Plaintiff's local time, with actual knowledge Plaintiff was sleeping and did not want to be called.

18. Plaintiff and Defendant Reynaud maintained some contact throughout May, June, July, and August of 2021.

19. On or about 9 August 2021, Defendant Reynaud was hospitalized for an "accidental drug overdose" (her words) which appeared to have been a purposeful suicide attempt based on the fact that she took a significant amount of Paracetamol (Tylenol) and had previously mentioned threatened to overdose on that medication. This is relevant because Defendant admitted that she was previously referred to a psychiatrist by her employer at the EU Parliament due to emotional problems she had work that caused her to be discharged by one Member of European Parliament ("MEP") before she was brought on and her contract picked up by her current MEP (Defendant Bilde) and because Defendant Reynaud caused a scene big enough that one man was fired or resigned after false accusations from her. Defendant Reynaud also told Plaintiff that she would

7

often break down crying at her desk, cry in the presence of coworkers, and would cry in the presence of politicians who she felt mistreated her so as to shame them into "being nice" to her.

20. Plaintiff's last phone contact with Defendant Reynaud was on or about August 27 or August 28 of 2021. Defendant Reynaud asked Plaintiff if he would ever sue her for defamation and inquired, "if I did defame you, what would you do in response?"

21. Defendant Reynaud's history of making false accusations and causing problems in the work place apparently dates back to at least 2014-2015 when she was assistant to the mayor of Le Luc in Provence (France), working for the same political party that Defendant Bilde works for, the mayor resigned within 4 weeks of Defendant Reynaud beginning her job, and the replacement mayor resigned within 6 months, stating, "my staff has sabotaged me." Defendant Reynaud then had to leave the mayor's office, leave Provence, and leave France entirely, landing a job with an MEP in Brussels Belgium. Defendant Bilde has full knowledge that Defendant Reynaud is unfit to hold a position as an accredited parliamentary assistant based on Defendant Reynaud's employment history, psychiatric history, and behavior.

22. On 15 May 2020 Defendant Reynaud called Plaintiff during Reynaud's work day and she stated, "I turn 31 tomorrow, it is all downhill from here" and she spent approximately *four hours* discussing how and why she was going to commit suicide, she discussed methods, she talked about overdosing on medication (the sort of medication she "accidentally" overdosed on during 9 August 2021), she expressed a desire to end her relationship with Plaintiff, she told Plaintiff that Plaintiff would be better off without her, and she spent a fair amount of time outright crying. She also claimed she had tax/financial problems and that it was only a matter of time until the authorities caught up with her.

23. Plaintiff wondered how it was possible that Reynaud had a job if she was able to make a phone call for several hours in the middle of the work day to threaten suicide and cry while at her office. Upon information and belief Defendant Bilde does not supervise Defendant Reynaud in any meaningful context.

24. Defendant Reynaud has a history of attempting to secure employment in the European Parliament for Emmanuel Brun d'Aubignosc, a notorious neo-Nazi organizer, Holocaust denier, and the webhost administrator for most European based Holocaust denial websites. (https://www.splcenter.org/fighting-hate/intelligence-report/2007/belgian-webmaster-hosts-us-european-hate-sites)

25. Upon information and belief Defendant Reynaud's motive in defaming Plaintiff and seeking to injure Plaintiff is in part due a desire to retaliate against Plaintiff because Plaintiff has a history of litigation against neo-Nazis and Holocaust deniers such as Martin Lindstedt (see 1:19-cv-02786-CAB, 1:19-cv-02589-CAB, 1:19-cv-02103-SO, and 1:19-cv-02615-JRA).

26. Defendant Reynaud was also livid that Plaintiff elected (in the spring of 2021) to pursue reconciliation with Stefani Rossi Reo instead of continuing a long-distance relationship with a woman as unstable as Defendant Reynaud. Defendant Reynaud referred to Stefani Rossi Reo as a "droopy eyed dog faced big nose Brazilian 6" and at one point outright stated she was seething over the fact that Plaintiff Reo was back with Stefani Rossi Reo. Plaintiff had informed Defendant Reynaud that Plaintiff would not leave Stefani Rossi Reo for Defendant Reynaud.

27. It was towards the end of November and the beginning of December in 2020 when Defendant Reynaud admitted to Plaintiff she had been under the care of a psychiatrist and had been medicated that Plaintiff resolved to, in short order, end his relationship with Defendant Reynaud because Plaintiff believed he had finally found an explanation for Defendant Reynaud's

unstable behavior and it could no longer be written off as anxiety due to COVID-19 lockdown stress.

28. Defendant Reynaud had ample motivation to contrive, fabricate, exaggerate, and outright invent complaints to make against Plaintiff in an attempt to maliciously injure Plaintiff. Defendant Reynaud knows that Plaintiff is an active rifle instructor and an avid student who regularly attends classes offered by Ohio Peace Officer Training Academy instructors and that Plaintiff has actively participated in approximately 60 tactical firearms classes, most of which are certified by OPOTA, in the last 5 years, and that making accusations to local police that Plaintiff had committed high degree misdemeanors and perhaps even felonies (particularly sexually oriented/based crimes), would be one way to derail Plaintiff's life because Plaintiff's recreational activities frequently involve tactical firearms training with officers and instructors from various law enforcement agencies. Defendant Reynaud embarked on a campaign to socially isolate Plaintiff, compromise Plaintiff's reputation in his community while seeking to have Plaintiff wrongfully charged with crimes and subjected to the ridicule and scorn that accompanies being accused or charged with a sexually based offense (illegal dissemination of pornographic material). Defendant Reynaud is also aware that Plaintiff Reo lives under ongoing death threats from Martin Lindstedt of the Aryan Nations and that being disarmed would put Plaintiff Reo at an extreme disadvantage in life in light of the ongoing and current threats by Martin Lindstedt and the Aryan Nations.

29. Upon information and belief Defendant Reynaud has a strong ideological affinity with neo-Nazi Holocaust denier Emmanuel Brun d'Aubignosc to the extent she tried to get him a job in the European Parliament, she met him socially on multiple occasions, she hired him to do website work for her, she hired him to build blogs for her, she hired him to help suppress search results on the news articles related to the Le Luc mayor resignations in Provence, and she vouched for his

10

reputation to help him gain entrance into her political party and to secure an interview for a job at the European Parliament. Upon information and belief Defendant Reynaud does not approve of Plaintiff's history of litigation against American based Holocaust deniers that has resulted in the shutting down of some websites and the obtaining of significant money judgments against some key individuals and organizations.

30. Defendant Reynaud accused Plaintiff to the police in Plaintiff's hometown of telecommunications harassment, specifically with Reynaud stating that Plaintiff harassed her from September 2021 to March 2022, despite Defendant Reynaud's own admission that she never once responded to any of Plaintiff's emails from September 2021 to March 2022, let alone respond with a "cease/desist" request. Indeed, Plaintiff admits to sending some emails (attempting to inquire if she was doing well and asking for more details about what happened with her hospitalization in August 2021), but there were never responses, not even acknowledgements, and certainly no request to cease contact.

31. Defendant Reynaud caused to be initiated against Plaintiff a police investigation for telecommunications harassment in Ohio that was initiated on or about 3 March 2022 and was closed on or about 20 March 2022 with the officers determining that there was no evidence that a crime had been committed, there were jurisdictional issues, and even telling Plaintiff that he was free to contact Defendant Reynaud if Plaintiff so wished, although the office advised that Plaintiff refrain from having contact with a woman as "obviously unstable" as Defendant Reynaud was deemed to be.

32. Defendant Reynaud caused to be initiated against Plaintiff a police investigation for revenge pornography in Ohio that was initiated on or about 3 March 2022 and was closed on or about 20 March 2022 with the officers determining that there was no evidence that a crime had

been committed, there were jurisdictional issues, and Defendant Reynaud failed to provide any evidence that pornographic content had been disseminated.

33. Defendant Reynaud formally, in writing to police and other third parties, accused Plaintiff Reo of R.C. § 2917.211, disseminating pornographic material. Plaintiff never disseminated any such material.

34. Defendant Reynaud formally, in writing to police and other third parties, accused Plaintiff Reo of R.C. § 2917.21, telecommunications harassment. Plaintiff never engaged in telecommunications harassment of Defendant Reynaud, on the simple basis that Defendant Reynaud never responded to a single one of Plaintiff's emails and never requested that Plaintiff stop emailing her.

35. Defendant Ludivine Joan Claudia Reynaud is an employee of Defendant Dominique Bilde and Defendant Reynaud works as a credentialed parliamentary assistant in the European Parliament in Brussels.

36. All or substantially all of Defendant Reynaud's tortious conduct occurred from her official government email account, during office work hours, and presumably (upon information and belief) via the use of her office computer and office internet services.

37. Defendant Bilde has an employment relationship with Defendant Reynaud. Defendant Reynaud has worked for Defendant Bilde for approximately 4 or 5 years.

38. Defendant Reynaud is incompetent (or malicious) and unfit to hold a credential as a credentialed parliamentary assistant. Defendant Reynaud is emotionally unstable and upon information and belief is still under the care of a psychiatrist and is still being medicated per a plan established by her employer years ago as a result of one Defendant Reynaud's dramatic outbursts at that time.

39. Defendant Reynaud has obvious and clear ties to notorious neo-Nazis and Holocaust deniers throughout the European Union, many who are likely violating hate speech laws in the EU for hosting Holocaust denial websites, yet Ms. Bilde continues to employ Ms. Reynaud despite Reynaud's unstable behavior, misuse of work resource, abuse of her work email and inappropriately using her status as a parliamentary assistant in making false accusations to add weight to the credibility of the accusations, and Ms. Reynaud's extremely questionable judgment in associating with people such as Emmanuel Brun d'Aubignosc. In no meaningful context does Ms. Bilde hold Ms. Reynaud accountable for Ms. Reynaud's behavior in the context of her employment within the EU Parliament as a credentialed assistant. No objectively reasonable individual would allow Ms. Reynaud's employment to continue given the totality of the circumstances. Ms. Reynaud is completely and categorically unfit to hold her credential in the EU Parliament.

40. Defendant Bilde has actual or constructive knowledge of Defendant Reynaud's incompetence and lack of fitness to hold her job and to faithfully discharge the duties and responsibilities of a credentialed parliamentary assistant.

41. Because Defendant Bilde has negligently hired, negligently retained, and negligently supervised employee Defendant Reynaud, Defendant Reynaud has been free to engage in conduct ranging from spending an entire day (10 May 2021) sending harassing emails to Plaintiff, making phone calls to Plaintiff to threaten suicide (15 May 2020), utilizing her work email, her work credentials, her name and position as an assistant to an MEP to make false police reports and utter calumny against Plaintiff (3 March 2022), to all manner of other conduct related thereto. If an employee can spend entire working days, on multiple occasions, doing nothing that even

13

approaches actual work, then the supervisor is not providing any supervision in any meaningful context.

42. Upon information and belief Defendant Bilde does not supervise Defendant Reynaud in any capacity, a reasonable conclusion in light of the fact that Defendant Reynaud is apparently able to spend entire work days doing anything and everything except actual work. Defendant Reynaud is essentially a civil servant working on a salary provided by money from tax-payers across the European Union and Defendant Bilde apparently sees nothing wrong with an employee spending an entire working day sending 119 personal (harassing) emails, spending hours making phone calls, using her official EU Parliament government account to spend an entire work day emailing false accusations to police in the United States to cause problems for an ex-lover. There is no basis by which a reasonable party could conclude that Defendant Bilde supervises Defendant Reynaud, unless Defendant Bilde has actual knowledge of Defendant Reynaud's conduct and either approves and condones the conduct or is indifferent to said conduct.

43. On 31 March 2022, Defendant Reynaud spent more than 2 hours on the website Quora, deleting dozens of her more controversial answers/content, removing her posts articulating support for French colonial imperialism, French colonization of Indochina and Africa, and then changing her profile name from "Ludivine Reynaud" to "Professor Calculus" and adding the bogus credential that she studied Physics and Astronomy and graduated in 2012. Defendant Reynaud has a 5-year degree from Sciences Po, a university which does not have a Physics program. This was after Defendant Reynaud complained to Mentor Police that Plaintiff had sent communications to Defendant Bilde complaining and warning of Defendant Reynaud's activities and misuse of work resources. Defendant Bilde is still not meaningfully supervising Defendant Reynaud because Defendant Reynaud is spending hours of each working day on social media, among other activities.

14

44. Defendant Reynaud has caused injury to Plaintiff in excess of one hundred and fifty thousand dollars ($150,000.00).

45. Defendant Bilde has caused injury to Plaintiff in excess of seventy-five thousand dollars ($75,000.00).

## V.  TRIAL BY JURY DEMANDED

46. Plaintiff respectfully demands a trial by jury on all of the issues set forth herein that are triable by right.  Civ.R. 38.

## VI.  CAUSES OF ACTION

### COUNT I
### COMMON LAW DEFAMATION
### AGAINST DEFENDANT
### LUDIVINE JOAN CLAUDIA REYNAUD

47. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

48. Defendant Reynaud published false and defamatory statements about Plaintiff to third-parties via making police reports and sending emails to police, officials with the prosecutor's office, officials with the City of Mentor, and other third parties, government entities, and upon information and belief non-governmental entities (private third parties).

49. Defendant Reynaud's false and defamatory statements about Plaintiff were made by Defendant Reynaud without privilege. Defendant Reynaud is not a mandatory reporter under Ohio law and is not afforded privilege to make false or defamatory accusations in a report to law enforcement.

50. Defendant Reynaud acted with at least negligence in making false and defamatory statements about Plaintiff.

15

51. Defendant Reynaud failed to act reasonably in attempting to discovery the truth or falsity or defamatory character of Defendant Reynaud's publication about Plaintiff. Indeed, Defendant Reynaud had actual knowledge that the statements were false because Defendant Reynaud knows that Plaintiff has never possessed pornographic material about her and has never disseminated such material. If Defendant Reynaud actually had evidence that Plaintiff had ever published pornographic material, she likely would have turned it over to the police along with the defamatory report she made and the police might very well have conferred with the prosecutor to possibly charge Plaintiff with a crime (something Defendant Reynaud was doubtlessly seeking to achieve).

52. Defendant Reynaud's false and defamatory statements about Plaintiff are defamatory per se insofar as said statements reflect upon the character of Plaintiff by bringing him into ridicule, hatred, or contempt, and affects Plaintiff injuriously in his future trade or profession.

53. Defendant Reynaud's false and defamatory statements about Plaintiff are defamatory per se to the extent that most of the statements in question are allegations or accusations of criminal conduct in violation of various sections in the Ohio Revised Code and the United States Code. Other allegations are defamatory per se to the extent that they accuse the Plaintiff of conduct that is morally reprehensible or would cause him to be viewed in an objectionable manner by his community.

54. Defendant Reynaud had actual knowledge that Plaintiff would sue her for defamation if she defamed Plaintiff because in some of their final conversations prior to ending contact in the last days of August 2021, Defendant Reynaud explicitly asked Plaintiff, "Would you ever sue me in Ohio for anything? You are a lawyer and a defamation lawyer at that. Are you going to get mad at me and sue me someday?" Plaintiff responded by asking her, "Do you plan to commit intentional torts against me? No tort means no lawsuit. In short, if you are planning to defame somebody you

16

know to be a defamation attorney, expect me to sue you in Ohio. If you are not going to commit intentional torts against me then I won't be suing you in Ohio or anywhere."

55. Upon information and belief Defendant Reynaud is a serial defamer who is used to making false accusations against colleagues, supervisors, male politicians (in France and Belgium), and essentially getting away with it while her political party National Rally simply moves her from one posting to another so she becomes somebody else's problem in a manner that reeks of the Roman Catholic Church simply shifting problematic priests from one diocese to another instead of actually addressing the issue. Defendant Reynaud knew that if she defamed Plaintiff, an accomplished defamation attorney established in the Cleveland legal community, she was almost certainly going to be sued by Plaintiff for defamation in a court located in Ohio. Yet Defendant Reynaud, with full knowledge that she would be sued for various intentional torts, still made the false accusation to police that Plaintiff had disseminated pornographic content about her. Upon information and belief Defendant Reynaud acted with Sullivan actual malice, common law malice, and out of a desire to provoke litigation for reasons that remain known only to her.

56. Defendant Reynaud committed against Plaintiff the common law tort of libel per se. Further, she had a scienter evincing Sullivan actual malice and common law malice when she committed said tort and is liable to Plaintiff for the damages arising therefrom.

**COUNT II**
**COMMON LAW INVASION OF PRIVACY – FALSE LIGHT**
**AGAINST DEFENDANT**
**LUDIVINE JOAN CLAUDIA REYNAUD**

57. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

58. Defendant Reynaud made false and derogatory statements about Plaintiff that Defendant published to third-parties via making police reports and sending emails to police, officials with the

17

prosecutor's office, officials with the City of Mentor, and other third parties, government entities, and upon information and belief non-governmental entities (private third parties).

59. The false and derogatory statements made by Defendant Reynaud about Plaintiff placed Plaintiff before the public in a false light.

60. The false and derogatory statements made by Defendant Reynaud about Plaintiff are highly offensive to a reasonable person.

61. Defendant Reynaud is at fault and knew or acted with recklessness as to the truth of the statements made by Defendant Reynaud that concern Plaintiff.

62. Defendant Reynaud has actual or constructive knowledge that Plaintiff did not impersonate Defendant Reynaud on any websites, pornographic or otherwise.

63. Defendant Reynaud has actual or constructive knowledge that Plaintiff did not disseminate pornographic material of her, concerning her, or purporting to represent her, to any third party, and that Plaintiff never was even in possession of pornographic material depicting Defendant Reynaud.

64. As a direct and proximate result of Defendant Reynaud's statements about Plaintiff, Plaintiff has been and will continue to suffer damages in the form of mental anguish and reputational injury. Plaintiff has worked hard to maintain a lawful lifestyle with a proper and appropriate reputation befitting a professional in the legal community of Northeastern Ohio and Defendant Reynaud has single-handedly damaged Plaintiff's reputation in Plaintiff's own home city, in the eyes of local government officials and law enforcement, individuals whose professional function involves, among other things, operating the Mentor Municipal Court, a court before which Plaintiff regularly appears to advocate on behalf of clients.

65. Defendant Reynaud committed against Plaintiff the tort of invasion of privacy – false light and is liable to Plaintiff for the damages arising therefrom.

## COUNT III
## ABUSE OF PROCESS AGAINST DEFENDANT
## LUDIVINE JOAN CLAUDIA REYNAUD

66. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

67. Defendant Reynaud set in motion a legal proceeding in proper form and with probable cause (although that probable cause was based on a false statement given to police). The proceeding set in motion was a criminal investigation.

68. The proceeding was perverted to attempt to accomplish an ulterior motive for which the proceeding was not designed. Criminal investigations are not designed to allow a jaded ex-lover to seek revenge against the man who picked another woman over her and who had a major ideological difference with her far-right views. Defendant Reynaud perverted the criminal complaint and investigation process out of a desire to maliciously injure Plaintiff.

69. Plaintiff suffered a direct damage to his reputation, lost time, and had to consult with two criminal defense attorneys in Ohio and one in Belgium because of Defendant Reynaud's uttering of a calumny in the form of making a false police report against Plaintiff.

70. Defendant Reynaud acted with an intentional or reckless *scienter* when she undertook to injure Plaintiff via the abuse of legal process.

71. Due directly and proximately to Reynaud's abuse of legal process by conveying false statements of fact about Plaintiff, Plaintiff has suffered severe emotional distress in the form of vexation, irritation, anxiety, frustration, and hatred, as well as reputation damage.

72. Defendant Reynaud is liable to Plaintiff for common law abuse of process and the damages resulting therefrom.

## COUNT IV
## NEGLIGENT HIRING AGAINST
## DEFENDANT DOMINIQUE BILDE

73. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

74. Defendant Reynaud is listed on a publicly accessible staff directory as an employee of Defendant Bilde and a clear employer-employee relationship exists.

<<https://www.europarl.europa.eu/meps/en/124771/DOMINIQUE_BILDE/assistants>>

75. If all, or even some of the factual allegations against Defendant Reynaud are proven to be true, then Defendant Reynaud is incompetent as an employee. Especially if the issues about Defendant Reynaud's past behavior within the National Rally party in Provence and her behavior since arriving in Brussels and becoming a credentialed parliamentary assistant are proven true and correct, then not only is Defendant Reynaud established as incompetent and unfit, but Defendant Bilde would have actual knowledge of the incompetent and lack of fitness of Defendant Reynaud.

76. Based upon representations made by Defendant Reynaud to Plaintiff in 2019-2020, Defendant Bilde was aware of the problems Defendant Reynaud had in 2016-2017 and the circumstances under which Defendant Reynaud left the employ of the politician (MEP) she worked for prior to her beginning her tenure with Defendant Bilde. Thus, Defendant Bilde has at least constructive knowledge of some of Defendant Reynaud's past evidence of incompetence and lack of fitness.

77. Because Defendant Bilde negligently hired Defendant Reynaud, when an objectively reasonable person would have refrained from extending employment in a sensitive government position to an unstable incompetent, Defendant Bilde permitted, by acts or omissions, the circumstances that resulted in Defendant Reynaud being able to injure Plaintiff.

20

78. Defendant Reynaud was able to utilize resources of her European Parliamentary office, along with the email account Ludivine.reynaud@europarl.europa.eu to make (false) complaints to American law enforcement about Plaintiff, with the use of a European Parliamentary account adding weight and credibility by the mere use of the name of the institution.

79. Defendant Reynaud is an individual who by no means should ever have been employed by Defendant Bilde to work in the European Parliament given her past history of causing the implosion of the careers of two mayors of Le Luc in Provence (France) in 2014-2015, and her blow-up drama that cost a man his career in Brussels in 2016-2017, her involvement with radical neo-Nazis and Holocaust deniers. If Defendant Bilde had exercised due care of the sort exercised by an ordinary reasonable person, she would never have hired Defendant Reynaud for anything, let alone a position as prestigious as being a credentialed assistant in the European Parliament. Defendant Reynaud is completely unworthy and unfit to hold a credential to work as a parliamentary assistant in a institution as esteemed and august as the European Parliament.

80. Defendant Bilde is liable to Plaintiff for the tort of negligent hiring because of the damages Plaintiff has suffered arising therefrom.

## COUNT V
## NEGLIGENT RETENTION AGAINST
## DEFENDANT DOMINIQUE BILDE

81. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

82. Plaintiff repeats the allegations contained in Count IV against Defendant Bilde and states that if Defendant Bilde was negligent in hiring Defendant Reynaud, Defendant Bilde has also negligently retained Defendant Reynaud, especially in light of issues Defendant Reynaud has caused at work and in light of Reynaud's misuse of work resources.

83. Defendant Reynaud included, in part, in her complaint to Mentor Police in Ohio that Plaintiff had written her boss (Defendant Bilde) about her (Defendant Reynaud). If Defendant Bilde had actual or constructive knowledge of the disputes Defendant Reynaud was having with Plaintiff and did not undertake corrective action in light of Defendant Reynaud's improper utilization of work resources such as internet services, email accounts, computers, and actual office hours/work time itself, then Defendant Bilde negligently retained Defendant Reynaud.

84. Defendant Bilde's negligent retention of Defendant Reynaud was the proximate cause of at least some of Plaintiff's injuries.

85. Plaintiff's injuries to his reputation and emotional well-being were a direct and proximate result of Defendant Bilde's negligent retention of Defendant Reynaud.

## COUNT VI
## NEGLIGENT SUPERVISION AGAINST
## DEFENDANT DOMINIQUE BILDE

86. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

87. Plaintiff repeats the allegations contained in Count IV against Defendant Bilde and states that if Defendant Bilde would necessarily be negligent in supervising Defendant Reynaud if Defendant Reynaud was able to engage in the tortious conduct described in Plaintiff's Complaint.

88. Given Defendant Reynaud's conduct during work hours, her extensive misuse and abuse of European Parliamentary resources, using hundreds of hours of her office working time and resources to pursue a relationship with Plaintiff and to vindictively try to injure Plaintiff in the aftermath of the end of the relationship, it is apparent that Defendant Bilde does not supervise Defendant Reynaud in any context.

22

89. Defendant Bilde's negligent supervision of Defendant Reynaud was the proximate cause of at least some of Plaintiff's injuries.

90. Plaintiff's injuries to his reputation and emotional well-being were a direct and proximate result of Defendant Bilde's negligent retention of Defendant Reynaud.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court will enter judgment against Defendant Ludivine Joan Claudia Reynaud in Plaintiff's favor in an amount of money that exceeds one hundred and fifty-thousand dollars ($150,000.00) for general, compensatory, non-economic, and special damages, award Plaintiff punitive damages against Defendant Reynaud in an amount the trier of fact deems just and proper (Plaintiff seeks $50,000.00 in punitive damages) [for an aggregate award of $200,000.00 dollars against Defendant Reynaud], award Plaintiff all costs associated with maintaining the instant civil action, award Plaintiff all pretrial and post-trial interest on any and all monetary relief awarded to Plaintiff, award Plaintiff injunctive relief by ordering Defendant Reynaud to remove from the World Wide Web and not republish thereto derogatory or invasive materials about Plaintiff that Defendant  Reynaud or Defendant Reynaud's agents published about Plaintiff, and will award Plaintiff all other relief to which Plaintiff is entitled as a matter of law or equity against Defendant Reynaud.

WHEREFORE, Plaintiff prays that this Court will enter judgment against Defendant Dominique Bilde in Plaintiff's favor in an amount of money that exceeds five-hundred thousand dollars ($500,000.00) for general, compensatory, non-economic, and special damages, award Plaintiff punitive  damages against Defendant Bilde in an amount the trier of fact deems just and

proper (Plaintiff seeks $50,000.00 in punitive damages) [for an aggregate award of $550,000.00 dollars against Defendant Bilde], and enter an injunction compelling Ms. Bilde to properly supervise her employee, Defendant Reynaud, and will award Plaintiff all other relief to which Plaintiff is entitled as a matter of law or equity against Defendant Bilde.

Respectfully submitted,

/s/ BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

**JURY DEMAND ENDORSED HEREON**

Plaintiff respectfully demands a trial by jury on all of the issues set forth herein that are triable by right.  Civ.R. 38.