**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BRYAN ANTHONY REO** | **Case No. 1:22-cv-00510-JG** |
| Plaintiff, | **Hon. James S. Gwin** |
| v. | |
| **LUDIVINE JOAN CLAUDIA REYNAUD** | |
| Defendant. | |

| | |
|---|---|
| **REO LAW, LLC** | **VASVARI & ZIMMERMAN** |
| Bryan Anthony Reo (#0097470) | Raymond Vasvari, Jr. (#0055538) |
| P.O. Box 5100 | K. Ann Zimmerman (#0059486) |
| Mentor, OH 44061 | 20600 Chagrin Blvd. |
| (T): (216) 505-0811 | Suite 800 Tower East |
| (E): reo@reolaw.org | Shake Heights, OH 44122 |
| *Pro se Plaintiff* | (T): (216) 458-5880 |
| | (F): (216) 302-7000 |
| | (E): vasvari@vasvarilaw.com |
| | (E): zimmerman@vasvarilaw.com |
| | *Attorneys for Ludivine Joan Claudia Reynaud* |

**PLAINTIFF BRYAN ANTHONY REO'S
MOTION FOR LEAVE TO EXCEED PAGE LIMITATION FOR
SECOND MOTION TO STRIKE AFFIRMATIVE DEFENSES OF DEFENDANT
LUDIVINE JOAN CLAUDIA REYNAUD**

**(ORAL ARGUMENT REQUESTED)**

NOW COMES Bryan Anthony Reo ("Plaintiff"), *pro se*, and hereby propounds upon Defendant

Ludivine Joan Claudia Reynaud ("Reynaud" or "Defendant") and this Honorable Court, Plaintiff's

Motion for Leave to Exceed Page Limitation for Second Motion to Strike Affirmative Defenses of

of Defendant Ludivine Joan Claudia Reynaud.

1

This motion has been in accordance with Local Rule 7.1(f) such that the memorandum exceeds 15 pages [the body of the brief is in excess of 15 pages but less than 20 pages] and it accordingly has the table of contents, table of authorities cited, a brief statement of issues to be decided, and a summary of the argument presented.

Plaintiff respectfully prays this Court will accept Plaintiff's brief after granting leave to exceed the page limitation.

Respectfully submitted,

/S/. BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

Dated:  August 31, 2022

**<u>CERTIFICATE OF SERVICE</u>**

I, Bryan Anthony Reo, affirm that I am a party to the above-captioned civil action, and on August 31, 2022, I submitted this Certificate of Service and Plaintiff's Motion for Leave to Exceed Page Limitation for Second Motion to Strike Affirmative Defenses of Defendant Ludivine Joan Claudia Reynaud to the Court's Electronic Filing System, which should serve the same upon the attorneys of record for Defendant Ludivine Joan Claudia Reynaud.


<u>/S/ BRYAN ANTHONY REO</u>
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

Dated:  August 31, 2022

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BRYAN ANTHONY REO** | **Case No. 1:22-cv-00510-JG** |
| Plaintiff, | **Hon. James S. Gwin** |
| v. | |
| **LUDIVINE JOAN CLAUDIA REYNAUD** | |
| Defendant. | |

**REO LAW, LLC**
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Pro se Plaintiff*

**VASVARI & ZIMMERMAN**
Raymond Vasvari, Jr. (#0055538)
K. Ann Zimmerman (#0059486)
20600 Chagrin Blvd.
Suite 800 Tower East
Shake Heights, OH 44122
(T):  (216) 458-5880
(F):  (216) 302-7000
(E):  vasvari@vasvarilaw.com
(E):  zimmerman@vasvarilaw.com
*Attorneys for Ludivine Joan Claudia Reynaud*

## PLAINTIFF BRYAN ANTHONY REO'S
## SECOND MOTION TO STRIKE AFFIRMATIVE DEFENSES OF DEFENDANT
## LUDIVINE JOAN CLAUDIA REYNAUD

## (ORAL ARGUMENT REQUESTED)

NOW COMES Bryan Anthony Reo ("Plaintiff"), *pro se*, and hereby propounds upon Defendant

Ludivine Joan Claudia Reynaud ("Reynaud" or "Defendant") and this Honorable Court, Plaintiff's

Second Motion to Strike Affirmative Defenses of Defendant Ludivine Joan Claudia Reynaud.

Plaintiff Bryan Anthony Reo, pro se, makes this motion pursuant to Fed. R. Civ. P. 12(f), Fed. R. Civ. P. 37(c)(1), Fed. R. Civ. P. 37(b)(2)(A)(i), and Fed. R. Civ. P. 37(b)(2)(A)(ii), and moves this Court to strike certain of Defendant's Affirmative Defenses, on the basis that the enumerated Affirmative Defenses are frivolous, unsupported by any facts or evidence, and that Defendant Reynaud has deliberately failed to participate in discovery or provide initial disclosures[1] relevant to the affirmative defenses in question while also obstructing Plaintiff from obtaining discovery on the same.

This motion is supported by the accompanying brief, Complaint, Answer, and any other records and filings of this action, and such other and further oral and documentary evidence as may be presented at any future hearing on this Motion. Plaintiff specifically requests oral argument on this matter.

Respectfully submitted,

/S/. BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

Dated:  August 31, 2022

---

[1] Defendant Reynaud's initial disclosures completely fail to identify the pornographic websites at issue. Her disclosures also fail to disclose the existence of the email correspondence she claimed to have had with the owners of the websites, and the disclosures fail to provide the names or contact information for the owners of those websites.

2

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BRYAN ANTHONY REO**<br>P.O. Box 5100<br>Mentor, OH 44061<br><br>        Plaintiff,<br><br>    v.<br><br>**LUDIVINE JOAN CLAUDIA REYNAUD**<br>Rue Dodonee 3<br>1180, UCCLE, Belgium<br><br>    Defendant. | Case No: 1:22-cv-00510-JG<br><br>Hon. James S. Gwin |

| | |
|---|---|
| **REO LAW, LLC**<br>Bryan Anthony Reo (#0097470)<br>P.O. Box 5100<br>Mentor, OH 44061<br>(T):  (216) 505-0811<br>(E):  reo@reolaw.org<br>*Pro se Plaintiff* | **VASVARI & ZIMMERMAN**<br>Raymond Vasvari, Jr. (#0055538)<br>K. Ann Zimmerman (#0059486)<br>20600 Chagrin Blvd.<br>Suite 800 Tower East<br>Shake Heights, OH 44122<br>(T):  (216) 458-5880<br>(F):  (216) 302-7000<br>(E):  vasvari@vasvarilaw.com<br>(E):  zimmerman@ vasvarilaw.com<br>*Attorneys for Ludivine Joan Claudia Reynaud* |

## BRIEF IN SUPPORT OF PLAINTIFF BRYAN ANTHONY REO'S
## SECOND MOTION TO STRIKE AFFIRMATIVE DEFENSES OF DEFENDANT
## LUDIVINE JOAN CLAUDIA REYNAUD

1

## TABLE OF CONTENTS

I. TABLE OF AUTHORITIES ................................................................................................... 3

II.  EXHIBIT LIST ................................................................................................................... 4

III.  STATEMENT OF ISSUE PRESENTED ............................................................................. 5

IV.  STATEMENT OF FACTS .................................................................................................. 6

V.  STANDARD OF REVIEW ................................................................................................. 7

VI.  LAW & ARGUMENT ....................................................................................................... 8

VII.  CONCLUSION .................................................................................................................. 24

# I. TABLE OF AUTHORITIES

**Case Law**

*Allen v. Pirozzoli*, 2016-Ohio-2645. ...................................................................................17


*Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) ...........................................7

*Gray v. Allison Division, General Motors Corp.*, 52 Ohio App.2d 348, 370 N.E.2d 747 (8th App. Dist. 1977) ......................................................................14, 15

*Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 905 (N.D. Ohio 2003)......7

**Statutory and Constitutional Law**

R.C. § 2739.02  .......................................................................................................15, 16

R.C. § 2917.211        ..........................................................................................18, 20, 21,

**Court Rules**

Fed. R. Civ. P. 12(f).........................................................................................................5, 7

Fed. R. Civ. P. 37(c)(1)...........................................................................................2, 5, 7, 25

Fed. R. Civ. P. 26(a)  .......................................................................................................27

**Persuasive Authority**

Restatement (Second) of Torts, § 563 (1977)...................................................................13

Restatement (Second) of Torts, § 566 (1977)...................................................................11

Restatement (Second) of Torts, § 571 (1977)...................................................................14

Restatement (Second) of Torts, § 581A (1977)................................................................16

## II.  EXHIBIT LIST

EXHIBIT 1 – Reynaud Initiating Email to Mentor Police

EXHIBIT 2- Report from Mentor Police

EXHIBIT 3- Reynaud's Deficient Initial Disclosures

EXHIBIT 4- Reynaud's Email from 31 March 2022

EXHIBIT 5- Reynaud's Responses to Interrogatories Objecting to Producing Names of Fact Witnesses

### III.  STATEMENT OF ISSUE PRESENTED

1.  Whether Bryan Anthony Reo ("Plaintiff") is entitled to this motion to strike affirmative

    being granted in Plaintiff's favor against Ludivine Joan Claudia Reynaud ("Defendant") in

    regards to her 8th and 9th Affirmative Defenses pursuant to Fed. R. Civ. P. 12(f), Fed. R.

    Civ. P. 37(c)(1), Fed. R. Civ. P. 37(b)(2)(A)(i), and Fed. R. Civ. P. 37(b)(2)(A)(ii).

        Plaintiff's Answer:           Yes.

        Defendant's Anticipated Answer:    No.

**Brief Statement of Issue**

The fundamental issue is whether or not Defendant's 8th and 9th Affirmative Defenses

should be stricken. The 8th as being legally insufficient and as a sanction, with the 9th

being stricken largely as a sanction for discovery violations and failure to make sufficient

and proper initial disclosures.

**Brief Summary of Argument-**

Defendant's 8th Affirmative Defense is legally insufficient because it is merely her

purported belief in the truth of her own defamatory statement, which is legally insufficient

per Ohio law. She has not actually asserted the defense of truth.

Defendant's 9th Affirmative Defense should be stricken as a sanction for non-compliance

with Initial Disclosure requirements and her baseless objections to being requested to

provide information relevant to disclosure of fact witnesses.

## IV.  STATEMENT OF FACTS

Plaintiff Bryan Anthony Reo sues Defendant Ludivine Joan Claudia Reynaud for defamation, false light, and abuse of process[2].

The Court entered a scheduling order on 11 July 2022, opening formal discovery[3].

Ms. Reynaud has substantially stonewalled and not cooperated with discovery[4].

---

[2] ECF Doc. # 1.
[3] ECF Doc. # 23.
[4] ECF Doc. # 29, 30, 31, and 32.

## V.  STANDARD OF REVIEW

Under Federal Civil Rule 12(f), a "court may strike from a pleading an **insufficient defense** or any redundant, immaterial, impertinent, or scandalous matter." Id. (emphasis added). Accordingly, affirmative defenses may be stricken from the pleadings if they are insufficient as a matter of law.

While a Fed. R. Civ. P. 12(f) motion to strike is drastic and generally disfavored, it is reviewed on an abuse of discretion standard. *Williams v. Provident Inv. Counsel, Inc*., 279 F. Supp. 2d 894, 905 (N.D. Ohio 2003).

Fed. R. Civ. P. 37(c)(1) provides that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply that evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless[5].

A Motion to Strike is appropriate where the Answer contains insufficient defenses or immaterial matter. Rule 12(f) of the Federal Rules of Civil Procedure states in relevant part that a District Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It has consistently been held that "the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." See *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)

---

[5] There is no justification for Reynaud's failures in initial disclosures nor is the failure harmless, but rather it is detrimental to Plaintiff's ability to conduct discovery on the owners of the pornographic websites that Defendant claims involved Plaintiff and served as the basis for most of her complaint to police.

## VI. LAW & ARGUMENT

Ms. Reynaud has stonewalled the case, concealed the identities of crucial fact witnesses, destroyed evidence, hindered courtesy service on a co-defendant, hindered service of a subpoena, made objections to being requested to provide the identities of fact witnesses after first failing to include them in her initial disclosures, and has not even responded to Requests for Production of Documents.

Plaintiff Bryan Anthony Reo has identified the following "affirmative defenses" of Defendant Ludivine Joan Claudia Reynaud as being in bad faith, unsupported by evidence, and consisting of defenses that law and equity require to be stricken for reasons[6] that Plaintiff will articulate and develop more fully below. Essentially, Ms. Reynaud is pleading affirmative defenses based on factual information that she was obligated to provide in initial disclosures which she never provided, noting she had full custody and control over the information, she never provided it to Plaintiff, and she never disclosed the identity of the fact witnesses to Plaintiff and thus hindered Plaintiff's ability to do third party discovery regarding the information.

## EIGHTH AFFIRMATIVE DEFENSE

The Eighth Affirmative Defense should be stricken for two reasons (technically three although the second and third reasons are essentially best analyzed by being merged into one single reason).

Firstly, because this Court made a mistake in its earlier analysis of the defense offered by Ms. Reynaud, concluding her defense was "truth" as opposed to what it was, her purported belief in the truth of her accusations.

---

[6] Largely due to Defendant's failure to make certain initial disclosures as to identifying fact witnesses and providing contact information.

Secondly, because Ms. Reynaud has behaved in a manner that demonstrates that she has never believed the truth of her own allegations, noting that the belief of a defamer in the truth of the statement is not a defense, the statement must actually be substantively true. It is not sufficient for a defamer to state, "I believed 2 and 2 equals 5" if 2 and 2 actually equals 4.

Further (and significantly), Ms. Reynaud has obstructed Plaintiff from being able to conduct discovery on the owners of the pornographic website(s) and has hindered Plaintiff's ability to actually get to the bottom of what she has alleged to the police. Ms. Reynaud's initial disclosures were deficient in so much that she completely failed to provide contact information for the operators/owners[7] of the pornographic website(s) whom she claimed at the 11 July 2022 status conference to have been in contact with via email. Ms. Reynaud told this Court on 11 July 2022, "I have emailed the operators of the pornographic websites with varying success receiving responses, but they won't give up the IP information without subpoenas." The names and contacts for these individuals[8] she claims to have been in email contact with are tellingly absent from her initial disclosures, and the email correspondence/chain[9] itself is also absent as a document Defendant Reynaud is disclosing.

**Analysis of First Defamatory Statement made by Reynaud to Police-**

There are two discrete statements contained within Ms. Reynaud's report to Mentor Police that must be analyzed as defamatory and while at times there will be some overlap in the analysis

---

[7] Nor did Ms. Ludivine Reynaud identify the websites, the owners, or provide the emails she claims to have exchanged with them, despite being requested to produce the same via Plaintiff's formal discovery propounded upon Defendant.

[8] No such people actually exist, thus they have no names unless Reynaud wants to make some names up.

[9] It is hard to disclose a communications chain that never existed.

as the statements were contained in the same report and made at the same time, Plaintiff will try to divide the statements and conduct an analysis specific as to each statement for reasons that will become clear as the analysis unfolds.

The first is Defendant's statement to police that strongly implied Plaintiff was threatening her with violence, threatening to kill her, threatening her with illegal criminal harm. Reynaud then turned over documents she said "consisted of the threats" at which time Mentor Police reviewed the documents and determined, "the only thing he threatens her with is litigation." Ms. Reynaud was in possession of all documents she claimed to have received from Plaintiff, all communications from Plaintiff, she chose to describe them to police as "most of the threats, when there are any, are threats to sue me" which directly implies there were "other threats" improper, illegal, criminal, violent threats of harm. Indeed, Ms. Reynaud was making a report to the police, what sort of threats do people normally report to the police? Threats of litigation or threats of violence? Ms. Reynaud knew full well that Plaintiff never threatened her with anything other than litigation. Her statement could have been and should have been "all he has ever threatened me with are lawsuits" but she said "most of the threats" which clearly suggests "other threats" but were the other threats? Ms. Reynaud never provided any insight into that, leaving police to conclude she was basing her statement on something she had not provided to them.

Defendant Reynaud's exact (first) statement was, *"I am taking the liberty to of writing to you with respect to one of your residents in Mentor, Ohio who has been displaying stalking and harassing behavior towards me over a six months period: sending threatening messages through mails, text messages, sending letters to my home and office address in Brussels Belgium, as well as my supervisor's mailbox at work. **Most of the threats**, when there are any, revolve around his*

10

*suing me and/or my boss on fanciful grounds and for imaginary offenses or otherwise sabotage my job to get me fired."* (Exhibit 1- Reynaud's 3 March 2022 email to Mentor Police)

Mentor Police reviewed \*all\* of the emails that Ms. Reynaud chose to provide them with, the ones she said constituted the "threats" and Mentor Police prepared a report stating,

> *"She forwarded some of the emails Bryan sent her, for proof of his correspondence to her. **<u>The only threats</u>** he makes towards her is that **<u>he may sue her</u>** for some of her past actions. Those emails were copied and placed into evidence. MPD has no jurisdiction in the case but we are going to reach out and speak to Bryan Reo as a courtesy."* (Exhibit 2- Report from Mentor Police)

Ms. Reynaud had implied, by stating, "most of the threats" that there were "other" or "some" threats that were something other than threats of litigation/lawsuits. In the context of her email, "I am being stalked, harassed, threatened, possibly impersonated on pornographic websites" she primed the police and caused them to initially believe she was being threatened with physical or otherwise criminal harm and that her ex-partner had made an account on porn sites, using her name, to post pornography. Reasonable people seldom report threats of civil litigation to the police. Ms. Reynaud also asked the police to take down a report and stated that she wanted a restraining order (Exhibit 1- Reynaud's 3 March 2022 email to Mentor Police).

Ms. Reynaud was not expressing a mere opinion regarding the nature of the threats that served as the basis of the first defamatory statement she made to police, even if she were, opinion would not shield her under the circumstances surrounding the making of the communication.

> **Expression of Opinion. A defamatory statement may consist of a statement of in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.** Restatement (Second) of Torts, § 566 (1977)

Ms. Reynaud knew her statement that she was being threatened by Plaintiff and that "most of the threats" consisted of litigation, would directly imply the allegation of undisclosed (defamatory) facts, specifically that Plaintiff had threatened to kill her, threatened her with violence, threatened her with physical harm or otherwise threatened her criminally. She chose to tell the police, "**most** of the threats are of litigation" instead of "**all** of the threats are litigation" or "the only thing he threatens is litigation" because she wanted to imply something nefarious and criminal and guide the police to arrive at that conclusion.

Ms. Reynaud has an education in law, holding a master's degree[10], she has full fluency in the English language[11], as a teenager she was an exchange student in the United States, and as an adult she has interned and lived in the United States and studied in the United States. Ms. Reynaud knows full well that "a man is threatening to file a civil lawsuit against me for things I have done to him" is not a crime and would not entitle her to a restraining order, hence she carefully chose her words and led the police to conclude that she was being stalked, harassed, threatened (with violence), and impersonated on a pornographic website so they would treat her matter as a serious (and criminal) problem rather than brushing her off for having a private/personal/relationship (and civil) dispute with Plaintiff. Ms. Reynaud, in anticipation of a legal dispute with Plaintiff, maneuvered to try to gain an early advantage by making false reports to police to try to maliciously injure Plaintiff[12].

---

[10] Ms. Reynaud has a degree from Sciences Po, Institut d'études politiques de Paris, internationally ranked as the second best university in the world for politics as of 2022. By no reasonable standard is Ms. Reynaud intellectually or academically deficient.

[11] See ECF No. 20-1, PageID # 180, "I am highly conversant in the English language." Indeed Ms. Reynaud holds a C2 certification from Cambridge University in the United Kingdom.

[12] Even after being served an email of the complaint on 31 March 2022, when she was done destroying evidence by deleting hundreds of her posts on social media, Ms. Reynaud called Mentor Police and emailed them, trying to get them to charge Plaintiff with a crime, she then called Plaintiff on the phone and told him

Ms. Reynaud intended the police to conclude that Plaintiff had made a criminal threat of harm or violence against her. The fact that the police contacted Plaintiff and conducted an investigation shows that Ms. Reynaud's intentions were met and that the police concluded from her statement that she had been threatened with violence or criminal harm.

> **Meaning of Communication. The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express.** Restatement (Second) of Torts, § 563 (1977)

Ms. Reynaud is an educated woman who intended to express what the police initially believed and conducted an investigation upon, that she was being "stalked, harassed, threatened, and impersonated on pornographic websites." If Ms. Reynaud had been candid and forthright with police in her initial communications and said, "he has been threatening me with civil litigation" there would likely never have been an investigation, let alone a report (that became an accessible public record) of the allegation(s), and Ms. Reynaud did not want that outcome.

Ms. Reynaud's first statement to police was clearly defamatory as a matter of law and her purported belief in the truth of that statement is no defense to liability, only the defense of truth would be legally sufficient, Ms. Reynaud has never asserted that defense, and the deadline to amend her answer to include that defense has long since passed.

**Analysis of Second Defamatory Statement made by Reynaud to Police-**

Ms. Reynaud's second defamatory statement contained within the same report to police was-

---

if he didn't drop the lawsuit she would work hard to have him charged with a crime, and she emailed police and copied Plaintiff on the email chain to let Plaintiff know she was communicating with police to try to get him charged with a crime as a means to intimidate Plaintiff into dropping the civil action.

*"... as well as impersonated me on porn sites (given that platform do not yield IP address information without a court subpoena, I cannot begin to prove his involvement in this however)."*

Defendant's purported belief in the defamatory statement is not a legally sufficient defense to a claim of defamation or libel per se. See *Gray v. Allison Division, General Motors Corp.*, 52 Ohio App.2d 348, 370 N.E.2d 747 (8th App. Dist. 1977) where the court held, "Asserted belief of defendant in defamation action in truth of allegedly defamatory charge is no defense."

> **It is not necessary that the defamer charge any particular criminal offense either by name or description, if the words used imply some crime of the type stated in Clauses (a) or (b). Neither is it necessary that the defamer directly charge the other with the criminal offense, or that the charge be made of the speaker's own knowledge or belief. If the imputation is sufficiently made, the defamer is liable although he expresses his own doubt as to the truth of the charge or <u>even if he expressly states his disbelief in it.</u>** Restatement (Second) of Torts, § 571 (1977) [slanderous imputations of criminal conduct]

Here Ms. Reynaud's Eighth Affirmative Defense is not an invocation or assertion of truth, but rather a mere statement of her purported belief in the supposed truth of her defamatory statements. "Any allegedly defamatory statements by Defendant were made with a belief that they were and are true." (ECF No. 9, PageID # 63). This is not a legally sufficient defense.

The Court in its earlier order striking some affirmative defenses, did not properly distinguish between *actual truth* (a viable defense) and a *defendant's purported belief* in the truth (a legally insufficient defense). The Court held that "Under Ohio law, truth is an absolute defense to defamation. Therefore, Defendant's defense that the statements are true is a valid defense." (ECF No. 28, PageID # 230) [with the court citing to Ohio Rev. Code. § 2739.02]

14

However, with all respect, this Court erred in failing to make the fine distinction between the defense of asserting actual truth, vs "defamer's purported belief in truth." Defendant's Affirmative Defenses contained within her Answer are rather revealing. Ms. Reynaud has not asserted as her Eighth Affirmative Defense the defense of "truth" but rather (direct quote)- "**Any allegedly defamatory statements by Defendant were made with a <u>belief</u> that they were and are true**." (ECF No. 9, PageID # 63).

At no time has the Defendant offered the defense of truth or actual truth, that is to say, "the statements were true" only her \*belief\* that the statements were and are true. There is a fine but clear distinction, to the extent that Ohio Law provides that-

> **In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense. In all such actions any mitigating circumstances may be proved to reduce damages.** R.C. § 2739.02

Ohio law does not provide that a defendant's purported belief in the truth of the statement is any sort of defense, complete or otherwise. Ms. Reynaud has tellingly never alleged, "the statements were and are true" as a defense, but only, "I believed[13] the statements were true."

Reynaud's defense of her purported belief in the truth of the allegedly defamatory statement is insufficient as a matter of law. See *Gray v. Allison Division, General Motors Corp.*, 52 Ohio App.2d 348, 370 N.E.2d 747 (8th App. Dist. 1977) where the court held, "Asserted belief of defendant in defamation action in truth of allegedly defamatory charge is no defense."

---

[13] The test for truth is not whether the defendant purports to believe that pigs can fly, but whether pigs can actually fly. It doesn't matter if Defendant had a purported belief that Plaintiff did XYZ, unless Plaintiff did XYZ then there is no defense, and Defendant tellingly has never pled, "Plaintiff did XYZ" only, "I, Defendant, have a purported belief that Plaintiff did XYZ."

Whether Defendant Reynaud believed that her statements were true is not relevant in the instant action. Defendant Reynaud's claim that she believed the statement she made was true when she made it, is not an affirmative defense to defamation, it is not a sufficient defense to liability, and certainly not libel per se and her statements about Plaintiff constitute libel per se.

Writing that accuses person of committing crime[14] is libelous per se. See *Gosden v Louis*, 116 Ohio App.3d 195, 687 N.E.2d 481 (9th App. Dist, 1996).

The Second Restatement provides the following, which is essentially in line with Ohio law.

**True statements. Although the truth of a defamatory publication is a complete bar to recovery, a mistaken belief in the truth of the matter published is not sufficient to amount to a bar.** Restatement (Second) of Torts, § 581A (1977)

Ms. Reynaud's defense has never been, "the matter is true, it is true," but rather "I believe the matter is true" which is insufficient per the relevant Ohio law to support an affirmative defense of "truth" per R.C. § 2739.02.

Whether or not Ms. Reynaud had a genuine good faith belief in the truth of her defamatory statements, a bad faith belief, or a mistaken belief, her purported belief is ultimately no defense, particularly as regards libel per se, and allegations of criminal conduct are libel per se. Her purported belief is not at all relevant for the Eighth Affirmative Defense, although it will be somewhat relevant as to the Ninth Affirmative Defense and will be addressed [and shown to be inapplicable] below.

---

[14] It is not in dispute that Reynaud's writing(s) accused Plaintiff of crime(s).

16

## <u>NINTH AFFIRMATIVE DEFENSE</u>

Ohio law provides that statements to police reporting crimes or suspected crimes are only qualifiedly privileged, and the privilege does not apply if the report was made with actual malice, a reckless disregard as to the truth of the statement contained in the report, or with bad faith. *Allen v. Pirozzoli*, 2016-Ohio-2645.

Ms. Reynaud has asserted qualified privilege as what is ultimately likely to wind up her only viable defense[15]. For reasons that Plaintiff will demonstrate, qualified privilege is inapplicable and it should be stricken for either being inapplicable or as a sanction for Ms. Reynaud's misconduct in discovery, her non-participation in the case, and her failure to make proper initial disclosures to identify the names and contact for witnesses[16] relevant to her defense of qualified privilege.

In their summary and closing document in the police file, Mentor Police tellingly do not reference the alleged pornographic impersonation that Ms. Reynaud complained about, because Ms. Reynaud a) never provided the content to the police, b) never provided links to the content to the police, c) never provided screenshots of the content to the police, d) never provided email

---

[15] Plaintiff does not concede qualified privilege is viable, only that of all of Defendant's affirmative defenses, qualified privilege is the only one that might survive pre-dispositive briefing attempts to be stricken. Plaintiff cannot conceive of Defendant prevailing on a defense of qualified privilege given the particulars of this case and her conduct prior to the communications of the allegations and after making the allegations.

[16] The owners of the pornographic websites Ms. Reynaud claimed to have been in email contact with, they would be extremely relevant to whether or not Ms. Reynaud had any sort of good faith belief or reasonable belief that something was occurring involving her on pornographic websites. Ms. Reynaud was likely never in contact with any pornographic website owners because nothing ever happened, which is why she won't disclose the identities or contact information for the owners of the websites she told the Court on 11 July 2022 that she was in contact with. She cannot disclose the existence of people who never existed in the first place.

correspondence between herself and the owners of the sites, and e) never even described the content[17] to the police.

In short, after formally accusing Plaintiff, of the crime of R.C. § 2917.211, and getting a report taken down that becomes a permanent public record accessible by any and all for all time, and having Plaintiff subject to an investigation resulting therefrom, Defendant Reynaud provided zero evidence in support of the allegation, which is why the final police report closing out the investigation file doesn't even make mention of Reynaud's absolutely bogus accusation of pornographic impersonation. Reynaud had zero evidence and provided zero evidence, but it never stopped her from making the accusation.

When police informed Ms. Reynaud that Plaintiff denied involvement, and when Plaintiff denied involvement, Ms. Reynaud immediately abandoned her accusation and claimed that if Plaintiff was willing to deny involvement she was satisfied he was not involved; not exactly the response of somebody who genuinely believed in good faith that they were the victim of a crime and who felt the matter was serious enough to merit making a formal complaint (without evidence) and more than a half-dozen communications to Mentor Police over a several day period after having made several dozen contacts to Belgian Police over a two month period.

Ms. Reynaud's exact words, in an email to Plaintiff on which she copied Mentor Police on 31 March 2022, after Plaintiff had denied involvement in the pornographic content, were "*Results*

---

17 Under the circumstances no reasonable trier of fact could conclude that the content ever even existed or that Reynaud ever had any reasonable belief that the content existed, it is painfully obvious she made the whole thing up or staged a hoax. Ms. Reynaud never disclosed the content in initial disclosures and never provided contact information or identities of the website owners. Ms. Reynaud knows what she is doing.

appeared on cached Google search results but I can't tell who was involved[18]. I wrote as much to

Mr Shaw, who is a police officer in Mentor Ohio. If you say that was not you, then that is perfect."

[Exhibit 4- email from Reynaud to Plaintiff on 31 March 2022]

What is clearly going on is that Ms. Reynaud cooked up a pack of lies, tried to feed it to

the police to get Plaintiff at least investigated with a public record made against him in the form

of a police report based on her lies, if not outright charged or subjected to a restraining order, and

when her house of cards began to crumble and she realized on 31 March 2022 that she had actually

been sued in Ohio, she quickly back-pedaled and thought, "I ought to express some doubt in an

email to the police, that will allow me to straddle the fence as far as defamation goes." Ms.

Reynaud's double-dealing duplicitous behavior makes it clear she never had a good faith belief[19]

for her communications to Mentor Police.

Ms. Reynaud told the Court on 11 July 2022 that the "impersonation" of which she

complained to the police, consisted of finding four words, "Ludivine Reynaud Cam Girl[20]" in a

_____

[18] Reynaud couldn't tell who was involved, and she's never undertaken any steps to try to determine it, never issued one single subpoena, never disclosed the website addresses or contact info for the owners she claims to be in email contact with. She has done no discovery on her end and has stonewalled Plaintiff's ability to figure out what is going on and who is involved. Reynaud acts like a woman who has actual knowledge of the falsity of her allegations, if not at least a reckless disregard [demonstrated by her failure to investigate] as to the truth, combined with her immediately backing down from her allegations after Plaintiff made an immediate denial of involvement. Reynaud never believed a word she communicated to the police and her own actions and inactions make that painfully obvious.

[19] A woman who genuinely believed she had been threatened and impersonated on a pornographic website wouldn't say "well he says he didn't do it, that's good enough for me" the instant the police told her, "he denies involvement." She only made that last minute denial because she had actual awareness that she was being sued and she was desperate to try to salvage her situation.

20 Cam Girl is defined by Wikipedia as "A webcam model (colloquial gender-neutral: cammodel; female: camgirl; male: camboy) is a video performer who streams on the Internet with a live webcam broadcast.[1] A webcam model often performs erotic acts online, such as stripping, masturbation, or sex acts in exchange for money, goods, or attention.[2][3] They may also sell videos of their performances."

cache archive of Google Search results, which she said meant "at some point the words were hosted on several websites."

Instead of proceeding in good faith and telling police what was actually in issue, "I saw four words on a Google archive search cache and two of the words were Ludivine Reynaud" which would have rightly underwhelmed Mentor Police, Ms. Reynaud pumped them up, psyched them up, and primed the pan to have Plaintiff investigated for sex crimes he never committed. Ms. Reynaud was in full control of what she elected to communicate and convey to Mentor Police. Ms. Reynaud knew that the actual truth would underwhelm the police, which is certainly why she never provided screenshots, she never linked them to the allegedly offensive content, and she never even bothered to describe it.

Ms. Reynaud, an educated woman, chose to tell public officers, tasked with investigating crimes, she had been "impersonated" on multiple porn sites by an ex-lover. She knew full well that they were going to instantly conclude she was complaining of R.C. § 2917.211. Oxford dictionary defines impersonation as "an act of pretending to be another person for the purpose of entertainment or fraud." It does not define impersonation as "the act of one person writing the name of another person on a publicly visible website."

The crime of impersonating a police officer would not be satisfied by Bryan Reo telling people, "Cordell Walker is a Texas Ranger" but rather, by Bryan Reo going around and introducing himself as "Cordell Walker, Texas Ranger." Ludivine Reynaud, assuming she ever even saw[21] the words "Ludivine Reynaud Cam Girl" on website(s), would at most have a civil claim for

---

[21] She certainly never saw those words unless she herself put those words online.

20

defamation[22], but instead she opted to tell police, individuals tasked with investigating crimes, that Plaintiff had impersonated her on a pornographic website. She knew she was alleging a violation of R.C. § 2917.211 and she intended the creation of a report and investigation on that basis.

Ms. Reynaud knew full well that there was never an account online, with the name of Ludivine Reynaud, with a profile photo of her or purported to be of her, making pornographic posts online. At the absolute most, what Ms. Reynaud now claims, she saw four words "Ludivine Reynaud Cam Girl" in a Google cache archive of search results, and she claims she believed in good faith this meant "Reo is impersonating me on multiple pornographic websites."

This raises a serious question, if Ms. Reynaud was making a good faith report to police, why didn't she give them the screenshot(s) showing the 4 words, or at least tell them, "All I found were four words 'Ludivine Reynaud Cam Girl'." For all of her alleged good faith belief, she couldn't bring herself to give the actual screenshot of four underwhelming words to the police, nor could she even accurately describe it to them and reveal "Ludivine Reynaud Cam Girl" because she knew she wouldn't achieve her goal, triggering a criminal investigation of Plaintiff, if the police knew of what she was really complaining.

Ms. Reynaud complained to the police she had no way to prove Plaintiff was involved because she needed a court case to be able issue a subpoena. On 11 July 2022 she told this Court she was in email contact with the owners of the website(s). As of 11 July 2022, discovery formally began when the Court issued a scheduling order. To date Ms. Reynaud has never served a subpoena

---

[22] Plaintiff has never defamed Ms. Reynaud.

on any website owner[23] and she won't even disclose the actual url addresses for the content[24], thus preventing Plaintiff from serving subpoenas on third parties to help clear his own name[25].

Indeed Ms. Reynaud has still never provided details on the websites in question. She has never served a subpoena and she is never[26] going to serve a subpoena.

Plaintiff propounded the following discovery upon Defendant and still does not have the relevant information in the form of substantive answers.

**INTERROGATORY NO. 13:**  *Provide the url addresses of the websites wherein you claim Plaintiff "probably" impersonated you for pornographic purposes as well as the dates and times you accessed the website(s), the browser(s) you were using, how you found the website(s) and how long you remained on each website.*

In regards to Interrogatory 13- Ms. Reynaud objected and stated the request was "burdensome and disproportionate to the needs to the case." She then provided, notwithstanding the objection, 3 links to generic frontpages of pornographic websites without providing links to the actual content. This is the equivalent of saying "Ebay.com" when asked to provide a link to an allegedly fraudulent listing for an item on Ebay, instead of a link to the actual listing, keeping in mind there are hundreds of millions of listings on Ebay and a link to the front page of Ebay.com is meaningless in that context. Ms. Reynaud provided none of the other requested information such as the dates/times she accessed the websites, actual URL links to the content, information on the browser(s) she was using, how she found the website(s), and how long she remained on each website. Burdensome and disproportionate? It is somehow burdensome she be made to provide details on the allegedly pornographic content which she claims she reported, in good faith, to police, alleging Plaintiff was behind the same.

Ms. Reynaud also refused to provide substantive responses requesting the identities of fact witnesses with whom she had discussed Plaintiff or the case.

---

[23] It is hard to serve subpoenas on people who do not exist over things that never happened.
[24] It is hard to disclose websites that don't exist.
[25] When you stage a hoax you don't want the Plaintiff being able to show that you knew all along that you were perpetrating a hoax.
[26] Never say "never," but generally one cannot serve a subpoena on a non-existent website owner of a non-existent website over non-existent content.

22

**INTERROGATORY NO. 12:** Provide the names and contact information for all individuals and organizations with whom you have discussed Plaintiff from 1 January 2021 to the present.

Ms. Reynaud objected[27] and stated the Interrogatory was disproportionate to the needs of the case and that providing the information would be "burdensome."

Ms. Reynaud's initial disclosures list only documents of "online search results that connect Defendant by name to sexually themed websites" as a document being disclosed. Ms. Reynaud does not disclose the identities and contact information of the owners of the porno websites she represented to this court on 11 July 2022 that she had been in email contact with, she does not disclose [nor provide] the email correspondence, and she does not disclose the website addresses of the actual content/posts. She has never disclosed any of that[28].

Nothing in Reynaud's conduct or behavior demonstrates she has ever had a good faith belief in the allegations she made to the police, particularly regarding the idea that Plaintiff made criminal threats of harm to her, because she turned over the so-called threats, and it was not a matter of "most of the threats" being threats of litigation, as she said, implying "other threats" but rather it was "all of the threats" and "the only threats" being threats of litigation as the police determined after their review.

---

[27] Ms. Reynaud's responses and objections to Interrogatories are attached as Exhibit 5.

[28] Either the websites do not exist and there was no impersonation, it never happened, or Reynaud doesn't want Plaintiff getting his hands on the actual IP address via a subpoena issued by Plaintiff himself (Plaintiff will issue a subpoena if only Defendant tells him where to direct it) because the IP address will come back to Defendant's work at Brussels or her apartment at Uccle because she did the whole thing to herself and staged it as a hoax. Defendant Reynaud knows it either a) never happened or b) it happened but only because she herself staged it as a hoax.

23

Ms. Reynaud's conduct surrounding the reporting of alleged "pornographic impersonation" and her absolute failure to not only seek to discover the truth with her own subpoena power, but her stonewalling Plaintiff by not giving him the contact information of the website owners she claims to have been in communication with, is sufficient basis to conclude she never had any good faith. In any event, her failure to identify these website owners as fact witnesses possessing discoverable information in her initial disclosures [attached as Exhibit 3] has prejudiced[29] Plaintiff and hindered Plaintiff's ability to prepare evidence to present his case by hindering his ability to prepare to overcome her defense of qualified privilege.

It is reasonable to conclude that Reynaud and her Counsel deliberately undertook to undermine Plaintiff's case by not divulging the identities and contact information of the owners of the pornographic websites in their initial disclosures in the hopes of either completely shutting down Plaintiff's ability to do discovery on those individuals, or hindering and delaying Plaintiff's ability to do discovery by forcing Plaintiff to engage in formal motions to compel to obtain the identities and contact information[30] for those individuals.

## VII.  CONCLUSION

## STRIKING OF THE TWO PRIOR MENTIONED AFFIRMATIVE DEFENSES

---

[29] See attached Declaration of Plaintiff.

[30] Even if Reynaud gave up the contact information today, Plaintiff would be prejudiced, because the information should have been disclosed in Initial Disclosures. Reynaud has at a minimum greatly hindered, and at worst completely shut down, Plaintiff's ability to do third party discovery in the form of directing subpoenas to the owners of the pornographic websites wherein the allegedly offensive content was to be found. The only viable remedy to promote justice is to strike Reynaud's 8th and 9th Affirmative Defenses for her non-compliance with the requirements for making appropriate and complete Initial Disclosures.

This Court has the authority to impose sanctions upon Ms. Reynaud under Fed. R. Civ. P. 37(c)(1) by ruling that Ms. Reynaud is not allowed to rely upon the information, evidence, or witness, because she failed to identify the witness in initial disclosures. This would be most relevant to striking the Ninth Affirmative Defense.[31]

The most significant and proper basis to strike the Eighth Affirmative Defense is that it is insufficient as a matter of law, and as previously discussed, this Court [respectfully] erred in failing to make the proper nuanced distinction between the assertion of "truth" as a defense [legally sufficient, total bar] and defendant's purported belief in the truth [legally insufficient, no defense], with Defendant's Affirmative Defenses contained within her Answer making it clear that her defense is her purported belief in the truth, not actual substantive truth.

Because Ms. Reynaud never disclosed certain things in her initial disclosures, Plaintiff never endeavored to retain an expert in digital forensics, and has thus experienced that additional prejudice, because Ms. Reynaud now claims 6 pornographic websites are in issue, and is now providing generic links to their front/welcome pages, despite never disclosing any of this in initial disclosures and never having provided it to police and never disclosing the existence of said sites in initial disclosures.

Plaintiff prayerfully hopes that after careful consideration this Court will strike the Eighth and Ninth Affirmative Defenses for the reasons articulated above.

Respectfully submitted,

/S/. BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100

---

[31] Plaintiff wishes Ms. Reynaud had given up the addresses of the allegedly offensive websites as well as the identifiers and contact information for the persons she claims she was in contact with, but for reasons known only to Ludivine Reynaud, none of that was ever provided whether by initial disclosures or in responses to formal discovery requesting the same. Reynaud almost certainly knows that Plaintiff would have immediately served subpoenas upon any website(s) identified and upon any website owner/operators identified if only she had bothered to identify them. It is reasonable to conclude Ms. Reynaud absolutely does not want Plaintiff serving those subpoenas because it will reveal either A) there are no websites, or B) the IP addresses come back to Brussels/Uccle/Belgium and it was Ms. Reynaud who did the whole thing to herself as a staged hoax to be able to falsely frame Plaintiff for a sex crime.

Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

26

## CERTIFICATE OF SERVICE

I, Bryan Anthony Reo, affirm that I am a party to the above-captioned civil action, and on August 31, 2022, I submitted this Certificate of Service and Plaintiff Bryan Anthony Reo's Second Motion to Strike Affirmative Defenses to the Court's Electronic Filing System, which should serve the same upon the attorneys of record for Defendant Ludivine Joan Claudia Reynaud.

/S/ BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

Dated:  August 31, 2022

27