# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BRYAN ANTHONY REO** | **Case No. 1:22-cv-00510-JG** |
| Plaintiff, | **Hon. James S. Gwin** |
| v. | |
| **LUDIVINE JOAN CLAUDIA REYNAUD** | |
| Defendant. | |

**REO LAW, LLC**
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(T): (216) 505-0811
(E): reo@reolaw.org
*Pro se Plaintiff*

**VASVARI & ZIMMERMAN**
Raymond Vasvari, Jr. (#0055538)
K. Ann Zimmerman (#0059486)
20600 Chagrin Blvd.
Suite 800 Tower East
Shake Heights, OH 44122
(T): (216) 458-5880
(F): (216) 302-7000
(E): vasvari@vasvarilaw.com
(E): zimmerman@vasvarilaw.com
*Attorneys for Ludivine Joan Claudia Reynaud*

## PLAINTIFF BRYAN ANTHONY REO'S
## MOTION FOR PROTECTIVE ORDER ON DISCOVERY PROPOUNDED UPON
## PLAINTIFF BY DEFENDANT LUDIVINE JOAN CLAUDIA REYNAUD

## (ORAL ARGUMENT REQUESTED)

NOW COMES Bryan Anthony Reo ("Plaintiff"), *pro se*, and hereby propounds upon Defendant

Ludivine Joan Claudia Reynaud ("Reynaud" or "Defendant") and this Honorable Court, Plaintiff's

Motion for Protective Order on Discovery Propounded Upon Plaintiff by Defendant Ludivine Joan

Claudia Reynaud.

Plaintiff Bryan Anthony Reo, pro se, makes this motion pursuant to Fed. R. Civ. P. 26(c)(1)(A) and Fed. R. Civ. P. 26(c)(1)(D) and moves this Court to enter an order expressly forbidding Defendant from doing any discovery or inquiry into the following: Plaintiff's sexual orientation, Plaintiff's sexual history, Plaintiff's mental health, Plaintiff's emotional health, Plaintiff's psychiatric records, Plaintiff's psychological records, Plaintiff's logs and journals of his activities (including as a lawyer), Plaintiff's prescription medication history, Plaintiff's treatment notes for psychological or emotional matters, and Plaintiff's conversations or notes with any member of the clergy, going back to age 18 (18 years back in the past).

Defendant has made intrusive and extremely abusive discovery requests upon Plaintiff that inquire (without foundation) as to his sexual orientation, further inquiring (without foundation and without relevance) as whether he is active on an LGBT hook-up/dating app known as Grindr, and that seeks to request production of all manner of irrelevant (and privileged) documents that are only sought as a means to abuse, harass, oppress, and possibly humiliate Plaintiff. Among other things Defendant seeks to obtain Plaintiff's mental health records (including therapist notes) going back to when Plaintiff was 18 years of age, as well as any notes by members of the clergy from whom Plaintiff has sought counselling, going back to when Plaintiff was 18 years of age. These requests are beyond intrusive and vastly disproportionate to the needs of this case.

This motion is supported by the accompanying brief, Complaint, Answer, and any other records and filings of this action, and such other and further oral and documentary evidence as may be presented at any future hearing on this Motion. Plaintiff specifically requests oral argument on this matter.

Respectfully submitted,


/S/. BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

Dated:  September 22, 2022

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BRYAN ANTHONY REO**<br>P.O. Box 5100<br>Mentor, OH 44061 | Case No: 1:22-cv-00510-JG<br><br>Hon. James S. Gwin |
| Plaintiff, | |
| v. | |
| **LUDIVINE JOAN CLAUDIA REYNAUD**<br>Rue Dodonee 3<br>1180, UCCLE, Belgium | |
| Defendant. | |

**REO LAW, LLC**
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(T): (216) 505-0811
(E): reo@reolaw.org
*Pro se Plaintiff*

**VASVARI & ZIMMERMAN**
Raymond Vasvari, Jr. (#0055538)
K. Ann Zimmerman (#0059486)
20600 Chagrin Blvd.
Suite 800 Tower East
Shake Heights, OH 44122
(T): (216) 458-5880
(F): (216) 302-7000
(E): vasvari@vasvarilaw.com
(E): zimmerman@ vasvarilaw.com
*Attorneys for Ludivine Joan Claudia Reynaud*

---

### BRIEF IN SUPPORT OF PLAINTIFF BRYAN ANTHONY REO'S
### MOTION FOR PROTECTIVE ORDER ON DISCOVERY PROPOUNDED UPON
### PLAINTIFF BY DEFENDANT LUDIVINE JOAN CLAUDIA REYNAUD

---

Bryan Anthony Reo ("Plaintiff"), *pro se*, and provides the following as his Brief in Support

of Plaintiff's Motion for Protective Order on Discovery Propounded Upon Plaintiff by Defendant

Ludivine Joan Claudia Reynaud.

For the reasons that will follow, the discovery sought by Defendant, that is subject to this motion, is not even remotely relevant to any claims or defenses, it is not probative of any fact in consequence, it is unduly burdensome, it is not only disproportionate to the needs of the case, it is *vastly* disproportionate to the needs of the case, and it is not only unlikely to lead to discoverable information, it is only likely to lead to no information, privileged information, or inadmissible information. Finally, the information sought by Defendant is clearly only being sought to denigrate, demean, abuse, oppress, harass, annoy, and intimidate Plaintiff. For instance, Defendant wants to know the sexual orientation of Plaintiff, implicitly threatening to "out" Plaintiff if Plaintiff is anything other than heterosexual.

In his recent brief for a protective order, Defense Counsel stated that "inquiries into Ms. Reynaud's sexual history are irrelevant and seem likely if she is deposed before the Court can impose limits on her testimony. These questions would be intimate, embarrassing and oppressive." ECF No. 38 Page ID #482.

The same man, who believes it was not relevant whether Ms. Reynaud had been providing nude or risqué photos to men other than Plaintiff, or having promiscuous relations with other men around the time she was complaining she first saw herself associated with adult oriented websites (in other words "contrary to Fed. R. Evid. 412, Reo is not allowed to explore the possibility that the source of Reynaud's complained injury was somebody other than Reo") would now have this Court believe that Plaintiff Reo's sexual orientation, sexual past, and mental health (including therapist notes and clerical notes) going back to age 18 are now somehow in issue.

Why does Defense Counsel believe that Plaintiff's sexual orientation and sexual history/past are somehow relevant? Plaintiff is suing Defendant Reynaud for defamation[1] that Ms. Reynaud communicated to the Mentor Police (and other authorities) wherein she stated

*"... as well as impersonated me on porn sites (given that platform do not yield IP address information without a court subpoena, I cannot begin to prove his involvement in this however)."*[2] As well as:

*"Apparently porn sites have also been used – I cannot prove his involvement in this, however, as I do not have information pertaining to the IP addresses."*3

Defense Counsel wants to know about Plaintiff's mental health going back 18+ years to when Plaintiff was 18 years old, and the possibility of juvenile arrests, which if any existed, would have been more than 18 years ago. Plaintiff is a 36-year-old man and should not be subjected to such an intrusive fishing expedition which is calculated only to abuse and harass Plaintiff. This is extremely unusual for a case where emotional health and mental health have not been placed in controversy, and there is no evidence to support an inquiry into possible arrests (not even convictions, which they do not inquire about) from 18-25 years ago. Defense Counsel does not even ask about convictions, he asks about arrests. He does not even limit himself to recent (within 10 years) charges for crimes as an adult, or convictions[4] for crimes of dishonesty, he goes on a fishing expedition all the way back to year zero of Plaintiff's life. It is a legitimate concern of Plaintiff that Defense Counsel desires to use the discovery process in this case to obtain documents

---

1 In addition to suing for Invasion of Privacy False Light and Abuse of Process.
2 Exhibit 1
3 Exhibit 2
4 Incidentally Plaintiff has never been charged with, nor convicted of, any crime.

to either use against Plaintiff before Disciplinary Counsel or to try to defend himself before Disciplinary Counsel[5].

Ms. Reynaud's sexual history and behavior, at least recently (just prior to and during the time she complains of being linked to adult oriented websites) has always been absolutely relevant. However, Plaintiff's sexual history, sexual orientation, sexual behavior, mental health, therapist notes, particularly going back to the age of 18 years old (sought by Defendant) is not even remotely relevant.

Defense Counsel also misstated the nature of Plaintiff's Interrogatory regarding Defendant's sexual past. Plaintiff did not request "every person whom she has ever had sexual contact[6]" Plaintiff inquired as to partners Ms. Reynaud had from 2015 forward, and Plaintiff stipulated to narrow that request to 1 January 2020 to the present. It has recently come to light that Ms. Reynaud was sending photos of herself to numerous men (at least 4-5 other men) with whom she has been having erotic and romantically oriented communication exchanges, from September 2021 to March 2022, the relevant period during which she was complaining to authorities on two continents that Plaintiff was "probably" or "possibly" impersonating her on adult oriented websites. One of the men Reynaud sent photos to wrote to Ms. Reynaud that she had "great legs" and commented about her "panties being on fire." Ms. Reynaud also had casual sexual hook-ups with at least one other man (she gave a range of "two or perhaps three, you and one or two other

---

[5] Defense Counsel has repeatedly threatened to file an ethics grievance against Plaintiff, telling Plaintiff "Your fate is sealed" and thus Defense Counsel might anticipate filing a grievance against Plaintiff and he could also be anticipating gathering documents to defend against the possibility of a grievance being filed against him.
6 ECF No. 38 Page ID #482.

fellows" when asked to provide the number of her sexual partners from January 2020 to the present) stating that Plaintiff was one (February 2020) and the others would have been from January 2021 to August 2021, a period just prior to her complaining to authorities on two continents that Plaintiff was "possibly" or "probably" linking her to adult oriented websites. Ms. Reynaud's theory appears to be that it is more likely that Plaintiff had something to do with her being linked to adult oriented websites, and not her casual sexual habits and tendencies immediately before and during the relevant time period when she first claims her name was linked to adult oriented websites..

Ms. Reynaud also traveled to London and gave her hotel address to one of the fact witnesses[7] she identified in her supplemental responses to interrogatories as a "pen pal" and asked that man to meet her[8]. This behavior by Ms. Reynaud casts serious doubts on whether she ever believed, in good faith, that Plaintiff was possibly or probably involved in her being linked to adult oriented websites.[9] Ms. Reynaud's behavior during the relevant time period is by definition relevant. Inquiries into Plaintiff's mental health history, including therapist notes, going back 18+ years is clearly part of a strategy of "abuse the Plaintiff" adopted by Defendant and her Counsel.

---

[7] Plaintiff sent a communication to this disclosed fact witness asking for his cooperation in the case, the message was received and read, a subsequent follow-up message resulted in confirmation that the fact witness (Christopher Aspen) Ms. Reynaud gave her hotel address to has blocked Plaintiff, presumably because Ms. Reynaud procured his unavailability the same way she procured the unavailability of Vincent Uher, by asking him to not cooperate with Plaintiff.

[8] Ms. Reynaud has denied having had sex with that man at that hotel in London, although she also gave only a range and used words such as "perhaps two or three," "probably," "maybe," "about two or maybe one more than that," and "I think" when asked to give the number of men she had sex with from January 2020 to the present. The questions call for whole number quantities as to sexual partners, not educated eyeball guesses about the number of gallons of water in a bathtub.

Plaintiff's claims essentially control what Plaintiff has placed into controversy. Plaintiff has pled causes of action for 1- defamation, 2- invasion of privacy false light, and 3- abuse of process. Plaintiff has not sought to pursue a claim for any sort of emotional distress and has not sought to recover damages for emotional distress. Plaintiff has not placed his mental or emotional condition into controversy. Plaintiff has not placed his sexual reputation or history into controversy. Plaintiff has not placed his sexual orientation into controversy. This is not stopping Defendant from attempting to use the following discovery in what is clearly an attempt to beat Plaintiff into submission through the implicit threat of being made to choose between progressing with his case and being subjected to withering and abusive discovery, or bowing out[10].

---

[10] Defense Counsel already tried to threaten USC 1927 sanctions, he then threatened ethics grievance(s), and now he implicitly threatens to use the discovery process to denigrate, abuse, and humiliate Plaintiff. If Plaintiff's case was truly as frivolous as Ms. Reynaud's counsel insisted it was, he would have gotten it dismissed on the merits instead of carrying on in the truly despicable fashion he has used to litigate this case. Mr. Vasvari is unable to get this case disposed of on the merits, he is not willing to cooperate and meet deadlines, he is a blind man groping, and in the darkness he lashes out with baseless threats of sanctions, when those threats do not resonate with Plaintiff he escalates and brings in the threat of a grievance to Disciplinary Counsel, when even that did not rattle Plaintiff, he escalates and threatens to discovery on the most intimate and private details of Plaintiff's personal life. Plaintiff has never litigated in a case where a fellow member of the bar put on such a display of homophobic bigotry and threatened to try to discover if somebody was not heterosexual for the implicit purpose of "outing" them as a means to gain leverage to coerce a more favorable settlement. Again, given that Mr. Vasvari has already weaponized the grievance process and Ms. Reynaud has sought to weaponize the criminal justice process, to gain an edge in a civil action they anticipate losing, it is not really surprising that Mr. Vasvari would stoop to the utterly despicable level of using the implied threat of delving into somebody's sexual orientation and sexual history, to try to gain an edge in the case. Nothing would surprise Plaintiff about Defendant or her Counsel at this point. It is a tragic twist of fate that a man who was formerly a civil rights attorney has now become a mercenary for a jaded and bitter woman who has spent most of her adult life as a neo-fascist activist and organizer working for Marine Le Pen, the National Rally, and the Vlaams Belang [formerly Vlaams Blok. The overwhelming majority of Ms. Reynaud's adult life has been devoted to organized far-right political activism and involvement in neo-fascist organizations. It is no surprise Ms. Reynaud is attempting to use this case to sexually abuse a man she previously derided as "probably a closeted homosexual or bisexual" during the relationship period.

Defendant's Interrogatories Propounded Upon Plaintiff are attached as Exhibit 3 while the

Requests for Production are attached as Exhibit 4. The specific requests Plaintiff seeks a protective

order on are as follows.

The problems begin with Defendant's definition of "social media"

19. "**Social Media Account**" shall mean any account which you control, whether in
your own name or otherwise, that permits you to post messages or information on any platform
by which that content is distributed to other persons who have an account on the same platform,
including, without limitation: 4chan; 8kun; Reddit; DeviantArt; Discord; Duolingo; Facebook;
Flickr; Gab; Goodreads; Google Hangouts; **Grindr**; Hello; ICQ; Instagram; LinkedIn; Meetup;
MeWe; Nearby; NextDoor; Parler; Pinterest; Quora; SoundCloud; Snapchat; Stack Overflow;Tik
Tok; Truth Social, Tumblr; Twitch; Twitter; Weibo; WhatsApp; Whisper; WordPress, and;
YouTube.

Grindr is not actually a social media account or platform, it is a dating app, essentially an

LGBT dating app version of Tinder. Defense Counsel inquiring into whether Plaintiff uses Grindr

is essentially asking, "do you use an LGBTQ dating app?" with the implied threat[11] of, "if you do,

---

[11] Mr. Vasvari's threat of 1927 sanctions, his threat of ethics grievances, telling Plaintiff "the die
is cast, your fate is sealed" and "I intend to expose you in regards to women, your relationships,
your attitudes towards women, and your ideas" makes it clear that his inquiry into Grindr is an
implied threat, "if you are not heterosexual, I will use discovery in this case to out you." Vasvari's
conduct is almost certainly violative of Professional Rule 8.4(g) and 8.4(d). It is likely that Vasvari
is catering to the despicable bigotry of his client Ms. Reynaud who has referred to Plaintiff as a
"deranged closeted homosexual" and who wants to use this case to try to delve into Plaintiff's
personal and sexual life. Ms. Reynaud has spent the better part of her adult life working for neo-
fascists such as Jean Marie Le Pen's National Front, Marine Le Pen's National Rally, and the
Vlaams Blok which is now known as the Vlaams Belang. Ms. Reynaud is a hate-monger who has
enlisted a willing Defense attorney in her vengeance quest against Plaintiff, hence the abuses of
discovery and Ms. Reynaud's apparent willingness to pay Vasvari over $40,000.00 to date for the
work he has done [according to deposition testimony and emails from Mr. Vasvari about how
much he billed her for resolving the issues from 31 August 2022 to about 9 September 2022]. On
2 September 2022 Ms. Reynaud testified at her deposition that she had paid Mr. Vasvari $12,000
as of that date, and on 9 September 2022 Mr. Vasvari told Plaintiff he had spent at least 60 hours
on the case from 31 August to 9 September, representing an additional $19,800 dollars. This would
not include work done since 9 September. Ms. Reynaud's legal bill to Mr. Vasvari was at least
$31,800 as of 9 September 2022 and is now likely around $40,000 or more, not counting the
$10,000 Ms. Reynaud admitted she paid to her first lawyers. Triggering discovery disputes by

and if I find out, expect me to out you in the course of this case." Tellingly, Defense Counsel does not ask about other dating apps such as Bumble, Hinge, Tinder, etc., but rather only a dating app that would be immediately revealing as to sexual orientation.

### INTERROGATORY No. 11
Please identify every person with whom you have had a romantic, sexual or erotic relationship, which relationship terminated at any point in the last five years, including relationships conducted in whole or in part online.

### INTERROGATORY No. 15
Please identify every person with whom you have consulted, or by whom you have been seen, counseled, or treated for any mental illness, emotional disturbance, addiction, substance abuse or other mental health issue at any point since you were aged 18.

### INTERROGATORY No. 16
Please identify with particularity any diagnosis you have received for any mental illness, emotional disturbance, addiction, substance abuse or other mental health issue at any point since age 18. Identification shall consist in disclosing: (a) the diagnosis; (b) the date of the diagnosis, and; (c) the person or persons by whom the diagnosis was made.

### INTERROGATORY No. 18
Please identify every drug or remedy prescribed for you in connection with any condition identified in response to Interrogatory No. 16 above.

Defense Counsel stated he "couldn't care less about" Plaintiff's sexual past and only wants to know who Plaintiff's past partners are because he alleges Plaintiff has not properly disengaged from Defendant Reynaud and he wants to examine Plaintiff's behavior in the aftermath of previous relationships after they ended. If such an assertion were true, he could simply inquire as to whether any of Plaintiff's past partners had ever had a dispute with Plaintiff that involved law enforcement, victim's advocate, the prosecutor's office, or involved their seeking or obtaining a civil protection stalking order (which would potentially be reasonable areas of inquiry). However, he does not make such a narrow and focused inquiry (which Plaintiff would happily and readily answer), he

_____

missing deadlines, not responding, and then asking Plaintiff about his sexual orientation and seeking the notes of any therapist he had since 18 years of age may be a great way for Mr. Vasvari to generate bills to send his client, but it is not ethical, it is a colossal waste of the resources and time of this Court, and it is extremely unnecessary and unwarranted. Mr. Vasvari has missed almost every single deadline in this case and doubtlessly billed his client a pretty penny for the unnecessary mountain of paperwork he has kicked up from all of the unnecessary work that he made necessary.

makes intrusive and clearly irrelevant inquiries in what is obviously a quest to abuse the Plaintiff in regards to the most intimate details of Plaintiff's private and personal life, all without any basis other than a clear desire to gain advantage over Plaintiff through abuse of the discovery process. Defendant is free to ask, "have you ever been a respondent for a Civil Protection Stalking Order?" "have you ever been arrested or charged with stalking or any domestic violence related offense?" Plaintiff will readily answer[12]. Instead, the discovery he seeks to do a fishing expedition deep into Plaintiff's private, personal, and intimate affairs, all on matters that Plaintiff has not placed into controversy.

The requests for production of documents are no less abusive nor intrusive, and just as irrelevant, just as disproportionate to the needs of the case, and just as unlikely to lead to discoverable information.

**REQUEST FOR PRODUCTION NO. 39**
Your current health insurance policy, and all such policies in effect during the last five years,  along with any group, plan or membership numbers, and identity or insurance cards.

**REQUEST FOR PRODUCTION NO. 40**
Please produce HIPPA compliant releases authorizing the disclosure to undersigned counsel of your medical and mental health treatment records, including the notes of any mental health care provider. Applicable form releases are provided for providers associated with the Cleveland Clinic, University Hospitals and MetroHealth care systems.

**REQUEST FOR PRODUCTION NO. 42**
Any and all records of your having been involuntarily admitted to any hospital, psychiatric or mental health care facility, or having been to psychiatric evaluation at the request of any police or law enforcement agency.

**REQUEST FOR PRODUCTION NO. 55**
Every diary, journal, record, memoire or other periodic record of your thoughts, activities, emotions, impressions, reflections moods, and/or mental state in which any entry has been made during the last five years.

**REQUEST FOR PRODUCTION NO. 56**
All records, notes, treatment records, appointments, appointment reminders, prescriptions or communications to, from, with or relating to anyone who provide you with mental health

---

[12] The answers to all of those questions will be "No."

treatment or services during the relevant period, including without limitation any psychiatrist, psychologist, therapist, social worker, licensed clinical social worker, supervising licensed clinical social worker, or clergy member, which reflect treatment or services within the last ten years.

### REQUEST FOR PRODUCTION NO. 57

All records, notes, treatment records, appointments, appointment reminders, prescriptions or communications to, from, with or relating to anyone who provide you with substance abuse and/or addiction treatment or services during the last ten years, including without limitation any psychiatrist, psychologist, therapist, social worker, licensed clinical social worker, supervising licensed clinical social worker, or clergy member.

Given that Plaintiff has not placed his psychological, emotional, or mental state in controversy[13], and given that those matters are not even remotely relevant to claims or defenses, it makes no sense why the well-established psychotherapist-patient privilege would not apply, nor why the clergy-penitent privilege would not apply. Defense Counsel also seems to believe that his client's relevant sexual conduct during the period in dispute is not relevant, while not only is Plaintiff's sexual history over the last 5 years relevant, but that Plaintiff's very sexual orientation is relevant, because Defense Counsel absolutely wants to know if Plaintiff uses Grindr[14].

---

[13] Defense Counsel maintains that the narrative body of the complaint is sufficient to place those matters into controversy, although Plaintiff's Complaint tellingly does not include a claim for relief based in whole or in part on emotional distress damages or any claim that is clearly emotional in nature or substance.

[14] It is probably an attempt by Defendant to use this litigation to delve into Plaintiff's personal life in a futile attempt to confirm her earlier prejudiced assertions and slurs that Plaintiff was a "deranged closeted homosexual." Plaintiff does not wish to discuss his sexuality or allow this case to become one about his sexuality, suffice to say, Plaintiff will simply state, Plaintiff believes it is beneath his dignity to be exposed to irrelevant and intrusive discovery on his sexuality and sexual history and Plaintiff believes it is beneath the dignity of this Court for the proceedings of this Court to be hijacked by a bigoted Defendant and her mercenary hired-gun Counsel for such a shameful purpose. When the issue of Plaintiff's sexuality or sexual orientation is clearly not even remotely relevant to claims or defenses, and it is not relevant to any matter in controversy or any fact of consequence, Plaintiff should not be exposed as to discovery on those matters. If so ordered by this Court, Plaintiff will frankly discuss his sex life and sexual preferences, but Plaintiff does not believe that this case should entail the publishing of the details of Plaintiff's private life, particularly in regards to sex.

Defendant's Requests for Production #39, 40, 42, 55, 56, and 57 fall squarely within the categories of "completely irrelevant to claims and defenses," "disproportionate to the needs to the case," "unduly burdensome," "not reasonably calculated to lead to discoverable information," as well as "psychotherapist-privilege," while requests for production # 56 and 57 go straight to the heart of clergy-penitent privilege as well as psychotherapist-patient privilege.

Defendant's Interrogatories #15, #16, and #18 fall squarely within the categories of fall squarely within the categories of "completely irrelevant to claims and defenses," "disproportionate to the needs to the case," "unduly burdensome," "not reasonably calculated to lead to discoverable information," as well as "psychotherapist-privilege." Defendant's Discovery might as well just state, "provide all privileged, highly confidential, personal, and private information in your possession that can be used to humiliate and abuse you throughout the course of these proceedings."

Attempts at meet and confer to resolve this abuse of discovery were made by email beginning on 17 September 2022 (noting Plaintiff first raised issue with the discovery in a short email on 15 September 2022) and have ultimately proved unsuccessful as Plaintiff's requested deadline for the withdrawal of the abusive discovery has come and gone, with the offensive discovery requests not having been withdrawn. The email chain is attached as Exhibit 5. Plaintiff gave a deadline of 21 September 2022 at 4:00 pm, which Plaintiff extended to 22 September 2022 at 1:00 pm EST[15], with Plaintiff further extended "by a few hours" until the end of business 22 September 2022[16]. Plaintiff's final attempt to confer was around 5:00pm EST on 22 September

---

[15] Exhibit 6.
[16] Exhibit 7.

2022, after the final deadline which had already been extended twice. Plaintiff once more invited (in writing) Defendant (through her Counsel) to withdraw the enumerated discovery requests. As of the time of the filing of this motion the requests have not been withdrawn, and Defense Counsel has indicated he believes mental health is relevant and he apparently intends to maintain the requests and inquire at the upcoming deposition of Plaintiff.

Plaintiff apologizes for the harshness of his tone in this matter. This is very personal, it is emotionally charged, and Plaintiff has never in approximately 4.5 years as a licensed attorney and 10 years as a pro se litigant, encountered any licensed attorney as unethical, unprofessional, bullying, harassing, and vexatious the way Defense Counsel Vasvari[17] has shown himself to be in this case. Mr. Vasvari clearly lacks the diligence[18] and competence[19] to proceed on the merits and has wound-up resorting to threats to weaponize the grievance process and weaponize discovery to gain an edge in this case. The only person in litigation who has ever treated Plaintiff in a manner even approaching the level of what Raymond Vasvari has subjected Plaintiff to would be Martin Lindstedt, although Mr. Lindstedt[20] is not a licensed attorney in any jurisdiction, and his abusive

---

[17] Plaintiff hopes to never have to deal with this man again. Plaintiff has dealt with opposing counsel who drove hard bargains, engaged in difficult but meritorious motion practice, who made Plaintiff fight an uphill battle to procure recovery for his client (or himself such as the case was), but Plaintiff has never been on the receiving end of a weaponized grievance process, grievance threats, threats of multi-national prosecution, and attempts to weaponize discovery with threats at Plaintiff's sexuality and sexual history and the most intimate details of Plaintiff's personal history and mental health going back 16+ years.

[18] A diligent attorney would have been attentive to deadlines and kept the flow of the case progressing properly. The most diligent attorneys for Ms. Reynaud would probably be the first ones, those who suggested early settlement, although they were fired for their trouble, because Ms. Reynaud is clearly on a war path, a vendetta, a quest for blood, however you wish to term it.

[19] A competent attorney would be unlikely to lay the foundation for obvious discovery disputes by missing deadlines for responding to discovery on his Client's end and then propounding extremely abusive, intrusive, and clearly inappropriate discovery on the party opponent that is clearly going to trigger another dispute with significant motion practice.

[20] See 1:19-cv-02786-CAB, 1:19-cv-02589-CAB, 1:19-cv-02103-SO, and 1:19-cv-02615-JRA.

rants and childish pleadings were at times so over-the-top and absurd to the point of being farcical (he never tried to dress them up as professional filings) and he never served discovery seeking to do formal inquiry into Plaintiff's mental health records going back to age 18 or Plaintiff's sexual life[21]. It appears that Raymond Vasvari is essentially a more sophisticated version of Martin Lindstedt but with a license to practice law in Ohio, minus the overt racial[22] bigotry, but with the same serious fixation on Plaintiff's sexual life that Lindstedt has demonstrated.

If Counsel Vasvari had put 10% of the energy into observing deadlines and proceeding normally to litigate in accordance with the rules as he put into dreaming up threats of USC 1927 sanctions, threatening grievances, back-pedaling, offering implied quid pro quo deals to drop the sanctions talk, going to the Belgian Police with his client, conferring with the FBI with his client and Belgian police (after the Mentor Law Director and Lake County Prosecutor found no criminal conduct by Plaintiff and declined to wade into a civil matter in what they saw was a cheap attempt by the Defendant to weaponize the criminal justice process to gain advantage in a civil action), then perhaps Mr. Vasvari would be well on his way to resolving this case or at least in a position to brief a dispositive motion without threatening to bog this Plaintiff and this Court down in a

---

[21] Noting that Martin Lindstedt, while cross-examining Reo on the matter of domestication of a foreign judgment in the state of South Dakota, did ask Reo, "are you a homosexual?" which resulted in the trial court intervening and stating the question was not a legitimate or relevant question and was not to be answered, followed by Mr. Lindstedt asking, "do you consider yourself to be of the white race?" which resulted in the trial court intervening and stating the question was not a legitimate or relevant question and was not to be answered.

[22] It remains unknown when Defendant and her Counsel will begin an inquiry into Plaintiff's ethnic ancestry the way they have attempted to begin inquiries into Plaintiff's private sexual life and, emotional health, spiritual health, and therapist notes going back 16+ years. It is unclear what limits exist in regards to the bigotry and vindictiveness of Defendant Reynaud.

discovery dispute that is one entirely of his own making. For a basic defamation case, Defendant has succeeded in turning things into a mess.

It is worth noting that discovery opened on 11 July 2022, Plaintiff propounded his first packet on 11 July 2022, Defense Counsel immediately took issue with the packet in terms of size and scope, so Plaintiff, not sure if a counter-claim (which Defense Counsel said was likely coming) would ultimately materialize by the deadline of 28 July 2022, withdrew the packet, and reissued a significantly reduced discovery packet on 29 July 2022 after the deadline for amending the answer came and went and no counter-claim surfaced. Plaintiff propounded his second discovery packet around 12:00 pm EST on 15 September 2022. Defendant propounded her first (and thus far only) discovery packet around 9:10 pm EST on 15 September 2022. Defendant waited an extremely long time to begin her participation in discovery. It is likely an unfortunate reality that Defendant is going to use the discovery process to trigger disputes[23] and trigger delays, seeking to push back

---

[23] Defense Counsel also appears to be billing Ms. Reynaud quite a hefty sum for sorting out all of the motions that wound up filed by Plaintiff because Defense Counsel missed every significant discovery deadline thus far in this case. Defense Counsel's bigotry and flagrant abuse of discovery will likely continue for as long as his client continues to pay him. It appears Defense Counsel lays the foundation for a major discovery dispute, such as by not providing responses in accordance with deadlines, even when those deadlines are extended, not producing required documents ahead of a deposition, not making sufficient initial disclosures, and then he bills his client to clean up the messes that only came about as a result of his own incompetence and lack of diligence. It is unfortunate that Defendant has to pay the costs associated with her Counsel's malpractice. It is equally unfortunate that Defense Counsel, with 30+ years of experience in litigation, sees no problem trying to weaponize the discovery process the way he has done so, knowing full-well he has no remote chance of obtaining the intrusive discovery on Plaintiff that he seeks to obtain. Defense Counsel must reasonably realize that all he has done is assure another multiple dozens of hours of discovery disputes that will cost significant judicial resources. However, the dispute he is contriving to create will also enable him to bill his hapless and clueless client another $30,000.00 or so. This case can rightly be considered Defense Counsel Driven Litigation. Defense Counsel's objective is clear, get as much money from his client as he can, as quickly as possible, without regard for the Rules of Civil Procedure, judicial economy, the rights of the Plaintiff, the Rules of Professional Conduct, or basic standards of human decency. Essentially, this case cannot settle

the briefing deadline for dispositive motions and seeking to delay the trial, because they hope to use the intervening time to see what they can achieve on the ethics grievance front and the prosecution front. Plaintiff wanted to begin discovery immediately, and tried to, Defendant waited 67 days to begin discovery.

Plaintiff can deal with the threats of USC 1927 sanctions, talk of Rule 11, talk of Rule 37 sanctions, that is all standard civil procedure and a trademark of an aggressive litigator. Plaintiff should not have to litigate under coercive threats of ethics grievances, active and ongoing attempts to get the Belgian Police to procure the involvement of the FBI after Plaintiff's local prosecutors found no evidence of a crime by Plaintiff, and now abusive and intrusive discovery into Plaintiff's sexual history, sexuality, and sexual orientation with implicit threats to divulge or enter into the public record, information about Plaintiff's personal and sexual life.

Bryan Reo has been victimized enough by Ludivine Reynaud, first during the relationship with all of the drama, chaos, turmoil, and suicide threats that Ms. Reynaud heaped upon Mr. Reo in the form of her numerous abuses, then in the aftermath of the end of the relationship with all of the false accusations Ms. Reynaud leveled against Mr. Reo in Belgium and then in Ohio with the police in Mr. Reo's hometown (Mentor), Prosecutors in Mentor and Lake County, the FBI in Washington D.C. and Cleveland, and now Ms. Reynaud seeks to further victimize Mr. Reo by exposing him to the most horrifically intrusive and abusive discovery all because Mr. Reo

---

given that Defense Counsel is aware that his client still has a significant amount of money and he can still dream up ways to create work that he uses to justify sending her bills for problems he himself has contrived to bring about while telling her he is doing his part in her personal war against Plaintiff.

committed the mortal sin of ending a relationship with Ms. Reynaud to pursue reconciliation with not only another woman, but a woman whom Ms. Reynaud regarded as beneath herself and below her station[24] in life. Plaintiff prays that this Court will intervene and slam the brakes on Ms. Reynaud's latest attempt to further victimize the Plaintiff. Plaintiff just wants to get through this case as smoothly and expeditiously as possible and move on with his life.

Plaintiff prayerfully hopes that after careful consideration this Court will enter a protective order completely prohibiting the Defendant's discovery into the matters covered in the enumerated interrogatories and request for production of documents as provided in the body of this brief. Defendant has already maliciously injured Plaintiff through (false) complaints to Belgian police/authorities, (false) complaints to the FBI, and (false) complaints to Mentor Police, the Mentor Law Director, and Lake County Prosecutor's Office (the last three entities having rejected her false allegations), while Defendant's Counsel has threatened to avail himself of the grievance process to doubtlessly further maliciously injure Plaintiff at the behest and request of her client[25]. Defendant seeks to further maliciously injure Plaintiff through extremely intrusive, abusive, demeaning, and extremely irrelevant discovery requests.

---

[24] At one point Ms. Reynaud referred to Plaintiff's Brazilian ex-wife, Stefani Rossi, as a "droopy eyed big nosed dog ugly irrelevant third world peasant." In addition to the obvious homophobic bigotry on display on the part of Ms. Reynaud against Plaintiff, there is the classism, elitism, and racism against Stefani Rossi. A bigoted Defendant has enlisted the services of a lawyer willing to cater to the bigotry, malice, and hate of Ms. Reynaud and help her play out her vendetta campaign against Mr. Reo through the present legal proceedings. Anything to damage Mr. Reo further and anything to keep him from vindicating his rights through legal process. If the legal profession is in a state of widespread disrepute in American society it is in no small part because mercenary hired guns such as Counsel Vasvari are willing to conduct themselves the way they do in cases such as this, for the money they receive from bigoted and vindicative people such as Ms. Reynaud.

[25] At Ms. Reynaud's deposition on 2 September 2022, Plaintiff inquired, "did you instruct your attorney to threaten me with an ethics grievance in order to gain an advantage in this case?" and Mr. Vasvari invoked attorney-client privilege and ordered Defendant not to answer.

Plaintiff respectfully requests this Court enter a protective order completely prohibiting the line of discovery in the form of the enumerated interrogatories and requests provided above, as well as declaring that Defendant may not attempt to raise those issues, or questions, or make inquiry into those (or substantially similar) matters at any deposition they may notice as to Plaintiff. Plaintiff hopes that this Court will arrive at the right, just, proper, and sound conclusion, and will reject Defendant's attempt to coerce Plaintiff into choosing between maintaining his dignity[26] and privacy, risking discovery sanctions for resisting abusive discovery, or cooperating with being further abused by Defendant Reynaud through the discovery process.

Respectfully submitted,

/S/. BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P): (440) 313-5893
(E): Reo@ReoLaw.org
*Pro se Plaintiff*

---

[26] Not only Plaintiff's dignity, but the dignity of this judicial forum. It is beneath the dignity of this Court for Defendant to attempt to enlist this Court into Defendant's quest to humiliate and denigrate Plaintiff through Defendant's desired abuse of these proceedings.

## CERTIFICATE OF SERVICE

I, Bryan Anthony Reo, affirm that I am a party to the above-captioned civil action, and on September 22, 2022, I submitted this Certificate of Service and Plaintiff Bryan Anthony Reo's Plaintiff's Motion for Protective Order on Discovery Propounded Upon Plaintiff by Defendant Ludivine Joan Claudia Reynaud to the Court's Electronic Filing System, which should serve the same upon the attorneys of record for Defendant Ludivine Joan Claudia Reynaud.

/S/ BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P): (440) 313-5893
(E): Reo@ReoLaw.org
*Pro se Plaintiff*

Dated: September 22, 2022