# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BRYAN ANTHONY REO**

       Plaintiff,

  v.

**LUDIVINE JOAN CLAUDIA REYNAUD**

      Defendant.

**Case No. 1:22-cv-00510-JG**

**Hon. James S. Gwin**

---

**REO LAW, LLC**
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Pro se Plaintiff*

**VASVARI & ZIMMERMAN**
Raymond Vasvari, Jr. (#0055538)
K. Ann Zimmerman (#0059486)
20600 Chagrin Blvd.
Suite 800 Tower East
Shake Heights, OH 44122
(T):  (216) 458-5880
(F):  (216) 302-7000
(E):  vasvari@vasvarilaw.com
(E):  zimmerman@vasvarilaw.com
*Attorneys for Ludivine Joan Claudia Reynaud*

---

## PLAINTIFF BRYAN ANTHONY REO'S REPLY IN SUPPORT OF MOTION TO STRIKE AND SEAL

---

NOW COMES Bryan Anthony Reo ("Plaintiff"), *pro se*, and hereby propounds upon Defendant Ludivine Joan Claudia Reynaud ("Reynaud" or "Defendant") and this Honorable Court, Plaintiff's Reply in Support Motion to Strike and Seal.

Defense Counsel has made a number of material misstatements and engaged in fabrications, distortions, exaggerations, and omissions, while presenting what amounts to sophistry

1

or at least nonsensical and illogical rationale for the proposition that he has done no wrong and has not violated confidentiality as Plaintiff will now proceed to demonstrate.

Defense Counsel offers the example of countering the subornation of perjury as a basis by which a potential or prospective grievant could reveal the entire situation to the tribunal. Subornation of perjury which has been perpetrated on a tribunal, would necessarily have to be corrected by informing the tribunal, so corrective action to remedy the effects of the perjury could be undertaken. It is a false comparison. Plaintiff's alleged conduct in allegedly having direct contact with Defendant Reynaud, about personal and relationship matters at that, is not a matter of "subornation of perjury requiring informing the tribunal and divulging all related details." No matter how much Defense Counsel wishes to engage in ranting about that false equivalency, it remains a false equivalency.

Defense Counsel insists that by Plaintiff contacting police to report[1] what was likely coercion or extortion on the part of Defense Counsel (at least Plaintiff interpreted it as such), and mentioning in the vague general sense that "he has threatened to file an ethics grievance against me" Plaintiff has somehow expressly or explicitly waived confidentiality, is absurd beyond the pale and reveals a mediocre grasp of not only the rules of ethics but the canons of logic. Defense Counsel's mediocre sophistry is on full display with his assertion that Plaintiff waived confidentiality by making a report to police that, "Vasvari has threatened an ethics grievance and

---

[1] If Defense Counsel finds Plaintiff's report to the police that distasteful he can sue Plaintiff for defamation, which would not be without significant irony.

I believe it is an improper attempt to influence the case by trying to coerce me to withdraw discovery related motions."

Confidentiality of the grievance process would be expressly or explicitly waived if one of two things happened, 1- if Plaintiff himself were to publicly publish the actual grievance papers and supporting documents that had ultimately been furnished upon him by Disciplinary Counsel, or 2- If Plaintiff signed a waiver of confidentiality and furnished said waiver upon Disciplinary Counsel. Neither of the two has happened, and the mere reporting of a suspected crime where the substance of the crime consisted of a threat to file a grievance, with Plaintiff generically reporting the nature and type of the threat, does not amount to a waiver of confidentiality. Tellingly (and without explanation by Defense Counsel) the police report attached by Defense Counsel does not show Plaintiff to reference any details of the threatened grievance, the rules of ethics invoked, or the nature of the alleged violation, only that Plaintiff was complaining that Defense Counsel threatened a grievance in the context of Defense Counsel trying to coerce the Plaintiff to withdraw multiple motions filed on 31 August 2022.

In the context of the motions filed 31 August 2022, Defense Counsel began his campaign against Plaintiff with an email threatening that he would seek sanctions under USC 1927 if Plaintiff did not withdraw the motions. Plaintiff told him something along the lines of, "if you think you can get the sanctions, it is your right to try, go for it, file whatever you want, best of luck to you" which indicated the threat of sanctions would not deter Plaintiff and the threat of sanctions did not resonate with or even startle Plaintiff. Defense Counsel quickly followed up by referencing Plaintiff's alleged direct contact with Defendant Reynaud sometime during the first 10 days of

August 2022 and a statement along the lines of, "I am going to grieve you, your fate is sealed, you are doomed, the die is cast, you cannot change my mind or stay my hand." Various exchanges then ensued, Plaintiff contacted law enforcement, law enforcement contacted Defense Counsel Vasvari, and then Defense Counsel Vasvari emailed Plaintiff with an oddly conciliatory email that essentially stated, "It breaks my heart to think I might have to grieve you, I am reviewing this carefully with ethics experts, I have never grieved anybody, I don't want you to be the first. Perhaps we can cool things down and lower the temperature. I don't want to be in the position of having to file a grievance, I would only do it if I had to, if the rules required me to. I don't want my license to be on the line. Let's lower the temperature." Plaintiff never once communicated to anybody Plaintiff grieved that he was contemplating grieving them, was about to grieve them, was holding back and wanted to lower the temperature, wanted to negotiate, wanted to examine or re-examien things. Anytime Plaintiff felt it was incumbent upon Plaintiff to file a grievance, Plaintiff simply did so quietly while zealously observing confidentiality.

It was the remarkable shift on the part of Defense Counsel, in a matter of less than six hours he went from "withdraw these motions or I seek sanctions" to "I will grieve you, your fate is sealed, you cannot stay my hand, the die is cast, you are doomed" upon learning that the threat of USC 1927 sanctions did not intimidate Plaintiff in the slightest, to seemingly backing down on the sanctions threat after Plaintiff made a police report on the possible coercion/extortion.

4

Plaintiff will say that Plaintiff has been grieved (unsuccessfully) several times and has filed several (successful) grievances against others[2]. Plaintiff has never once, other than with Counsel Vasvari, had somebody involved in the grievance process discuss it directly with Plaintiff, file about it publicly, threaten it in emails. Plaintiff never threatened or even spoke about the possibility of the grievances he filed against other individuals, being filed, Plaintiff simply filed the grievances and left the process to the ethics panels. It is extremely unusual, to the point of reeking of an attempt to gain improper advantage or influence proceedings, for a lawyer who anticipates filing a grievance, to tell the subject/recipient of the grievance, "I am going to grieve you."

Mr. Vasvari is absolutely privileged to file an ethics grievance against Mr. Reo. However, Mr. Vasvari has zero privilege to publicly disclose the details or basis of the grievance (particularly when it does not involve or entail a fraud upon the tribunal) and Mr. Vasvari has zero privilege to essentially threaten Mr. Reo with the grievance in what reeked of an attempt to influence motion practice and gain an advantage. If Vasvari believed Reo was unethical as of sometime in the first 10 days of August, then Vasvari should have either immediately filed a grievance or kept his mouth his shut and his keyboard quiet and filed a grievance at a later date as he deemed appropriate. What he should not have done was actually what he did, communicate threats of grievances directly to Plaintiff and then divulge the entire substance, nature, basis, alleged rules violations, and attach what he purports will be his supporting documents for the grievance, in a filing he made before this Court.

---

[2] One of the individuals Plaintiff grieved was suspended for two years and is now pending permanent disbarment. This grievance was obviously made public when the suspension order went in, hence Plaintiff does not hesitate to allude to it or reference it publicly.

Defense Counsel has complained that Plaintiff has discussed the prospect of grieving him with police. That discussion with police was had in the context of the officer who took down the report stating that the "law director considers this entirely a civil dispute and a matter for the professional ethics board and suggests you file a grievance if you believe this violates the rules or professional conduct" to which Plaintiff stated (honestly) that he was in contact with the bar association on the matter.

Plaintiff will not publicly comment or discuss anything related to the matter of whether or not Plaintiff has initiated a grievance against Defense Counsel or whether or not Plaintiff intends to do so in the future, simply noting that if any such grievance has been filed or will be filed, it would be confidential and to discuss the matter would be improper.

Defense Counsel has taken issue with the fact that Plaintiff has not made a sworn statement providing names, dates, times, details of discussions that Plaintiff stated he had with Disciplinary Counsel regarding confidentiality. Plaintiff has stated in a sworn statement that he had a conversation with a representative of Disciplinary Counsel and their interpretation of the situation, as detailed and described by Plaintiff, is that confidentiality has likely attached if Defense Counsel has made a determination of an ethics violation on the part of Plaintiff and if he genuinely intends to file a grievance against Plaintiff, that Defense Counsel was likely without privilege to publish the documents that would serve as the basis of his evidentiary support for the grievance against Plaintiff. Out of obedience to the rules for the confidentiality of the grievance process, Plaintiff is not willing to say anything further regarding Defense Counsel's apparent and alleged violation of the Ohio Gov Bar Rules, his violation of the rules of confidentiality, and thus his violations of the

rules of professional conduct. Suffice to say, if Plaintiff has initiated a grievance or intends to do so, the process would be confidential and Defense Counsel would be entitled to the confidentiality he has so vigorously and diligently worked to deny Plaintiff.

Defense Counsel's publication of the allegations that Plaintiff violated specific rules of professional conduct, conduct and rules with in no way impact the tribunal, and Defense Counsel's publication of what he purports to be supporting documents demonstrating the alleged violations, were published by Defense Counsel solely out of a malicious desire to publicly disclose private facts as to Plaintiff. In short, Defense Counsel has used his role as counsel to a party in this case to perpetrate an intentional tort against Plaintiff, while simultaneously making a mockery of the rules of professional conduct by violating the confidentiality of the grievance process.

Defense Counsel has failed to provide a basis for the theory that Plaintiff allegedly asking to talk to Defendant, allegedly telling her how amazing the scenery in Montana was, allegedly articulating a desire that she could be by his side to see it, and allegedly asking that she talk with him and contemplate the possibility of coming to Montana, is somehow an underhanded attempt to gain a nefarious advantage in the case and ultimately settle the case on terms favorable to Plaintiff and detrimental to the interests of Defendant, or more likely detrimental to the interests of Defense Counsel[3]. Plaintiff was not angling to obtain a settlement; Plaintiff sent a personal and private email of an entirely interpersonal romantic nature. If Defendant had a romantic rendezvous with Plaintiff the case would still have continued unless and until she agreed to a written retraction.

---

[3] Defense Counsel has billed Defendant approximately $60,000 to date for what is highly questionable work product, delays, late filings, a handful of motions, and unnecessary discovery disputes and motions.

Plaintiff would not settle a case with a woman he was suing just because she went on a vacation and spent several weeks with him. In short, even if Defendant had picked up her phone, called Plaintiff, swooned over him during an amazing conversation, flown into the USA the very next day, and spent 3 weeks with Plaintiff prior to her departing to return back to the EU, if Defendant had not agreed to Plaintiff's terms for a retraction, the case would have continued. It would take more than a several week romantic romp with a party opponent for Plaintiff to settle a case. In any event, any attorney who does domestic relations can probably come up with dozens of examples where the party opponents had direct contact with each other and wound up withdrawing the dissolution petition or the complaint for divorce, or tentatively reconciled and then ultimately went through with the divorce any way.

The granting of a motion to strike is reviewed on an abuse of discretion standard and the matter is generally within the sound discretion of the trial court. Plaintiff hopes that this Court will give due and proper consideration to this matter and will ultimately help speed along a final and complete resolution of this and all related and relevant disputes by striking and sealing the documents in questions and permitting Plaintiff to move on cleanly and crisply. Defendant, via her Counsel, has unnecessarily complicated these matters by breaching confidentiality of the grievance process and setting the stage for possible appeals and a possible further lawsuit against Defendant herself and another lawsuit against both Counsels for Defendant, something Plaintiff would prefer to avoid as Plaintiff simply wants to move on in life.

Respectfully submitted,

/S/. BRYAN ANTHONY REO

8

Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Bryan Anthony Reo, affirm that I am a party to the above-captioned civil action, and on November 24 2022, I submitted this Certificate of Service and Plaintiff's Reply in Support of Motion to Strike. to the Court's Electronic Filing System, which should serve the same upon the attorneys of record for Defendant Ludivine Joan Claudia Reynaud.

<u>/S/ BRYAN ANTHONY REO</u>
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

Dated:  November 24, 2022